**David W. Criswell, OSB No. 92593**
dcriswell@balljanik.com
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Telephone: (503) 228-2525
Facsimile: (503) 295-1058

Attorneys for Kenneth Eiler, Trustee

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | ~~Bankruptcy~~ Case No. |
| **BARBARA PARMENTER** | 09-60875-fra11 |
| Debtor. | **TRUSTEE'S FIRST AMENDED PLAN OF REORGANIZATION** |
| | **(~~November 24, 2010~~MARCH 10, 2011)** |

Chapter 11 Trustee Kenneth Eiler (the "Trustee") proposes the following Plan of Reorganization pursuant to the provisions of chapter 11 of the Bankruptcy Code.

## I.

## DEFINITIONS

1.1     <u>Defined Terms</u>.  Definitions of certain terms used in this Plan are set forth in the attached <u>Exhibit 1</u>.  Other terms are defined in the text of this Plan.  In either case, when a defined term is used, the first letter of each word in the defined term is capitalized.

1.2     <u>Other Terms</u>.  Terms used and not defined in this Plan that are defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meanings ascribed to them in the Bankruptcy Code or in the Bankruptcy Rules, as applicable.

1.3     <u>Interpretation; Application of Definitions; and Rules of Construction</u>.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented; and (c) unless otherwise specified, all references in the Plan to Sections and Exhibits are references to Sections and Exhibits of or to the Plan. The words "herein," "hereto," "hereunder" and other words of similar meaning refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan. All references to dollars means United States dollars.

## II.

## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS AND PRIORITY CLAIMS

2.1 <u>Administrative Expense Claims</u>. Administrative Expense Claims that arise or are incurred prior to the Effective Date shall be paid by the Trustee (a) in full, in Cash, on the later of (i) the Effective Date, (ii) when due (in the case of Claims which become due after the Effective Date) or (iii) upon entry of a Final Order if Court approval is a precondition to payment or (b) as may be agreed upon in writing between the Holder and the Trustee.

2.2 <u>Priority Tax Claims</u>. Priority Tax Claims, if any, shall be paid by the Liquidating Trustee together with interest on the unpaid portion thereof, without penalty of any kind, at the rate required under Section 511 of the Bankruptcy Code on closing of the sale of the Village East Property.

Page 2 -   TRUSTEE'S PLAN OF REORGANIZATION (~~November 24, 2010~~MARCH 10, 2011)

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

# III.

## CLASSIFICATION AND TREATMENT OF

## CLAIMS AND EQUITY INTERESTS

3.1     <u>Classification</u>.  All Claims (other than Administrative Expense Claims and Priority Tax Claims) are placed in the following Classes for all purposes.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim qualifies within the description of such other Classes.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

a.     Class 1 (Property Tax Claims) consists of all Allowed Secured Claims for property taxes existing as of the Petition Date.  Class 1a consists of Property Tax Claims secured by real property subject to this Plan other the Village East Property and the Smith Oak Properties.  Class 1b consists of Property Tax Claims secured by the Village East Property and the Smith Oak Properties.

b.     Class 2 (Umpqua Bank) consists of the Allowed Secured Claims of Umpqua Bank ("Umpqua"), which include:

1.     <u>Class 2.1</u>  A loan in the original principal amount of $1,500,000.  Said Claim is secured by a deed of trust recorded June 28, 2005, against the Village East Apartments.

2.     <u>Class 2.2</u>  A loan in the original principal amount of up to $1,685,000. Said Claim is secured by a deed of trust recorded June 28, 2005 against the Wildgoose Subdivision Property.

3.     <u>Class 2.3</u>  A loan in the original principal amount of $100,000, as then modified to $160,000.  Said Claim is secured by a deed of trust recorded September 20, 2007, against the Creswell Property.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

4. <u>Class 2.4</u>  A loan in the original principal amount of $88,000  Said Claim is secured by a deed of trust recorded on August 10, 2007 against the 6304 Main Property.

c. Class 3 (BAC Home Loan/57th Springfield First) consists of the Allowed Secured Claim of BAC Home Loans securing a loan in the maximum principal amount of $332,000.  Said Claim is secured by a deed of trust against the 57th Street Property.

d. Class 4 (BAC Home Loans/57th Springfield Second) consists of the Allowed Secured Claim of BAC Home Loans securing a loan in the original principal amount of $41,500.  Said Claim is secured by a deed of trust against the 57th Street Property.

e. Class 5 (KeyBank Lowell) consists of the Allowed Secured Claims of KeyBank securing separate loans in the original principal amounts of $215,000 and $159,000 respectively. Each said Claim is secured by a separate deed of trust against the Lowell Property.

f. Class 6 (ODVA Lowell) consists of the Allowed Secured Claim of the Oregon Department of Veteran's Affairs securing a loan in the original principal amount of $180,000.  Said Claim is secured by a deed of trust against the Lowell Property.

g. Class 7 (Wells Fargo 1956 Smith Oak) consists of the Allowed Secured Claim of Wells Fargo, if any, securing a loan in the original principal amount of $112,500.  Said Claim purports to be secured by a deed of trust against the 1956 Smith Oak Property.

h. Class 8 (BAC Home Loans 1920 Smith Oak) consists of the Allowed Secured Claim of BAC Home Loans, if any, securing a loan in the original principal amount of $125,750.  Said Claim purports to be secured by a deed of trust against the 1920 Smith Oak Property.

i. Class 9 (Chase 5409 Ivy Street) consists of the Allowed Secured Claim of Chase securing a loan in the original principal amount of $292,000 made by M&T Bank.  Said Claim is secured by a deed of trust against the Ivy Street Property.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

j.    Class 10 (Landers Creswell Second) consists of the Allowed Secured Claim of Claudia Landers securing a loan in the original principal amount of $50,000.  Said Claim is secured by a second deed of trust against the Creswell Property.

k.    Class 11 (Wafford Wildgoose Subdivision) consists of the Allowed Secured Claim of Clarence Wafford and Thelma I. Wafford, husband and wife, securing a loan in the original principal amount of $100,000.  Said Claim is secured by a deed of trust against a portion of the Wildgoose Subdivision Property.

l.    Class 12 (Unsecured Claims) consists of all Allowed Unsecured Claims not otherwise treated under this Plan.

m.    Class 13 (Insider Claims) consists of the Claims of Bobbi LLC, Rip-Con, LLC, Dandy Resorts, LLC, Ginny Holdings, LLC, The Barbara K. Parmenter Irrevocable Trust, and any person or entity which meets the definition of "insider" under section 101(31) of the Bankruptcy Code.

3.2    Treatment.  The Classes of Claims shall receive the treatment described herein.

a.    Class 1 (Property Tax Claims).  Class 1a is not impaired by the Plan and each Holder of a Class 1a Claim is conclusively presumed to have accepted the Plan.  Class 1b is impaired.  All Holders of Property Tax Claims shall retain their Liens to the same extent and with the same validity and priority as existed on the Petition Date.  Holders of Class 1a Property Tax Claims shall be entitled to enforce their rights and remedies against the real property securing such Claims immediately upon the Effective Date and shall have no further Claims against the Estate, the Liquidating Trust, or the Assets.  Class 1b Property Tax Claims shall accrue interest from the Effective Date on the unpaid portion thereof, without penalty of any kind, at the rate specified in Section 511 of the Bankruptcy Code and shall be paid in full on closing of the sale of the particular real property which secures such Property Tax Claim.

b.    Class 2 (Umpqua).  Class 2 is impaired by the Plan. Each of Umpqua's Class 2 Secured Claims under Sections 506(a) and (b) of Code is deemed allowed, without offset,

Page 5 -   TRUSTEE'S PLAN OF REORGANIZATION (November 24, 2010MARCH 10, 2011)

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

counterclaim, subordination, charge-off or reduction of any kind or nature **(other than the agreed $200,000 to be paid by Umpqua as set forth in this Section 3.2(b))**, equal to the sum of outstanding principal, interest, and attorneys' fees as of the effective date of the Plan.   Umpqua has and shall have valid, perfected, enforceable, first priority and non-avoidable liens on and security interests in each of the Umpqua Properties, subject only to liens for real property taxes~~.~~ **, and other prior liens of record as of the Petition Date.**

The automatic stay imposed by 11 U.S.C. § 362(a) ~~is~~**and the injunction arising under 11 U.S.C. § 1141 are** lifted and permanently and irrevocably vacated as to ~~the Wildgoose Subdivision Property and the Creswell Property~~**all properties which secure the Umpqua Class 2 Claims** and Umpqua may exercise of all its rights and remedies under its deeds of trust and security agreements and loan documents related to such properties, including, at Umpqua's discretion, by institution of foreclosure proceedings in federal district court or state court**; provided, however, that Umpqua shall not obtain entry of a judgment of foreclosure on the Village East Property, or conduct a trustee's sale under the Oregon Trust Deed Act, as applicable, until the one-year anniversary of the Effective Date**.

The **Estate's interest in the** Wildgoose Subdivision Property ~~and the Creswell Property are~~**is** deemed abandoned ~~by~~**to** the ~~Estate~~**Debtor** upon the Effective Date.

**On or within 30 days of the Effective Date, the Trustee will deliver a non-merger deed (deed in lieu) to the Creswell Property to Umpqua.**

**Pending a closing of a sale of the Village East Property by the Liquidating Trustee as set forth herein, the Liquidating Trustee shall make monthly interest and principal payments at the rate set forth in the Village East promissory note on the Class 2.1 Allowed Secured Claim of Umpqua from the rents and revenues of the Village East Property.**

**The Liquidating Trustee shall be permitted to close a sale of the Village East Property within 12 months of the Effective Date.  Upon the closing of any sale of the**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

**Property, from the sale proceeds, the Trustee shall pay the real estate broker's commission, reasonable and customary closing costs, real property taxes, the unpaid balance of the Umpqua Allowed Class 2.1 Claim and establish a reasonable reserve for capital gains taxes.**

**In the event that the Liquidating Trustee does not close on a sale of the Village East Property within 12 months of the Effective Date, the interest of the Estate in the Village East Property will be abandoned to the Debtor and such abandonment shall be effective 14 days prior to a judicial foreclosure (sheriff's) sale or non-judicial (trustee's) sale under ORS Chapter 86. The Liquidating Trustee shall mail a notice of abandonment to Umpqua and the Debtor to evidence the date of such abandonment. In such event, upon abandonment, the Liquidating Trust and Estate shall have no remaining right, title or interest in the Village East Property and all tax attributes related to the Village East Property shall revert to the Debtor. The Liquidating Trustee shall continue to manage the Village East Property with Guardian Management as on-site manager and be entitled to use the rents and revenues of such property pending a sale by the Liquidating Trustee or abandonment to the Debtor.**

**Upon the Effective Date, Umpqua shall release the administrative freeze/hold on, and security interest in, and setoff rights and claims to, the approximately $28,000 in Lender account number 970115002 to allow the Liquidating Trustee access to such funds to pay as Administrative Expense Claims or for operating purposes**

**On the last day of the ninth month following the Effective Date, Umpqua will pay $200,000 in Cash to the Liquidating Trustee in settlement of the Trustee and Estate's Code Section 506(c) claims and in consideration of the release and injunction set forth in this Section and section 6.2 of the Plan.**

Upon the Effective Date, Umpqua and its employees, affiliates, agents and representatives are released and forever discharged from all claims, causes of action and liabilities of any type whatsoever, known or unknown, that are held in whole or in part by any of

Page 7 -   TRUSTEE'S PLAN OF REORGANIZATION (November 24, 2010MARCH 10, 2011)

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

the Releasing Parties (as defined below).  The Releasing Parties include Debtor, the Trustee, VE-Development, the Barbara Parmenter Living Trust, Bobbi, LLC, Rip-Con, LLC, Dandy Resorts, LLC, Ginny Holdings, LLC and all entities in which the Debtor has a majority or controlling interest, and the Bankruptcy Estate.  This **Plan and the order confirming the** Plan shall constitute and serve as a mandatory injunction against the Releasing Parties who are forever enjoined from initiating or pursuing against Umpqua any claim, cause or action or liability that has been released under this Plan.  This Plan injunction ~~prohibits~~**shall prohibit** the Debtor and all entities controlled by the Debtor or in which the Debtor has a majority interest from contesting the foreclosure by Umpqua of its Liens, including from filing any lawsuit to contest or impede the foreclosure by Umpqua of its trust deeds and security interests on any and all of the Umpqua Properties.

~~Upon the Effective Date, Umpqua shall release the administrative freeze/hold on the approximately $28,000 in Lender account number 970115002 to allow the Liquidating Trustee access to such funds.~~

~~Pending a closing of a sale of the Village East Property by the Liquidating Trustee as set forth herein, the Liquidating Trustee shall make monthly interest only payments at the rate set forth in the Village East promissory note on the Class 2.1 Allowed Secured Claim of Umpqua from the rents and revenues of the Village East Property.~~

~~The Liquidating Trustee shall be permitted to close a sale of the Village East Property within eighteenth months of the Effective Date.  Upon the closing of any sale of the Property, Umpqua shall pay over and assign from proceeds payable to Umpqua under this Plan, an amount necessary to ensure that the Liquidating Trustee receives a sum sufficient to fully fund the Village East Income Tax Reserve Fund, the General Reserve Fund and in addition the Carve-Out Amount for the benefit of Class 12 Unsecured Creditors.  In the event that the Liquidating Trustee does not close on a sale of the Village East Property~~

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

~~within 18 months of the Effective Date, the Village East Property will be deemed abandoned and the Liquidating Trust and Estate shall have no remaining right, title or interest in such Property and all tax attributes related to the Village East Property shall revert to the Debtor. In such event, Umpqua shall be allowed without further order of Court to commence a non-judicial trustee's/foreclosure sale under ORS Chapter 86 or commence a judicial foreclosure action in state or federal court and Umpqua shall within three days after expiration of the eighteenth month anniversary pay the Carve-Out Amount in cash to the Liquidating Trustee for the benefit of Class 12 Unsecured Creditors.~~ The release and permanent injunction set forth in this section and section ~~6.1~~**6.2** of the Plan shall preclude and prohibit the Debtor, VE-Development, the Barbara Parmenter Living Trust, Bobbi, LLC, Rip-Con, LLC, Dandy Resorts, LLC, Ginny Holdings, LLC and all entities in which the Debtor has a majority or controlling interest from interfering in any way with ~~such~~**any and all** enforcement actions by Umpqua.

   c. <u>Class 3 (BAC Home Loans/57th Springfield First)</u>. Class 3 is not impaired by the Plan and BAC Home Loans is conclusively presumed to have accepted the Plan. BAC Home Loans shall retain its Lien against the 57th Street Property to the same extent and with the same validity and priority as existed on the Petition Date. The Estate's interest in the 57th Street Property ~~shall be~~**was** abandoned ~~as of~~**prior to** the Effective Date **by Court order**, and BAC Home Loans may enforce its rights and remedies against the 57th Street Property. ~~Upon the Effective Date, tenants~~**Tenants** at such property are directed to remit rents to the Debtor. The Debtor shall be responsible for the return of any deposits collected from the tenants.

   d. <u>Class 4 (BAC Home Loans/57th Springfield Second)</u>. Class 4 is not impaired by the Plan and BAC Home Loans is conclusively presumed to have accepted the Plan. BAC Home Loans shall retain its Lien against the 57th Street Property to the same extent and with the same validity and priority as existed on the Petition Date. The Estate's interest in the 57th Street Property ~~shall be~~**was** abandoned ~~as of~~**prior** the Effective Date **by Court order**, and

Page 9 - TRUSTEE'S PLAN OF REORGANIZATION (~~November 24, 2010~~MARCH 10, 2011)

::ODMA\PCDOCS\PORTLAND\735708\46

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Case 09-60875-fra11 Doc 468 Filed 03/10/11

BAC Home Loans may enforce its rights and remedies against the 57th Street Property. ~~Upon the Effective Date, tenants~~**Tenants** at such property are directed to remit rents to the Debtor. The Debtor shall be responsible for the return of any deposits collected from the tenants.

e. <u>Class 5 (KeyBank Lowell)</u>. Class 5 is not impaired by the Plan and KeyBank is conclusively presumed to have accepted the Plan. KeyBank shall retain its Lien against the Lowell Property to the same extent and with the same validity and priority as existed on the Petition Date. The Estate's interest in the Lowell Property ~~shall be~~**was** abandoned ~~as of~~**prior to** the Effective Date **by Court order**, and KeyBank may enforce its rights and remedies against the Lowell Property. ~~Upon the Effective Date, tenants~~**Tenants** at such property are directed to remit rents to the Debtor. The Debtor shall be responsible for the return of any deposits collected from the tenants.

f. <u>Class 6 (ODVA Lowell)</u>. Class 6 is not impaired by the Plan and ODVA is conclusively presumed to have accepted the Plan. ODVA shall retain its Lien against the Lowell Property to the same extent and with the same validity and priority as existed on the Petition Date. The Estate's interest in the Lowell Property ~~shall be~~**was** abandoned ~~as of~~**prior to** the Effective Date **by Court order**, and ODVA may enforce its rights and remedies against the Lowell Property. ~~Upon the Effective Date, tenants~~**Tenants** at such property are directed to remit rents to the Debtor. The Debtor shall be responsible for the return of any deposits collected from the tenants.

g. <u>Class 7 (Wells Fargo 1956 Smith Oak)</u>. Class 7 is impaired by the Plan. Wells Fargo shall retain its lien**, if any,** against the 1956 Smith Oak Property to the same extent and with the same validity and priority as existed on the Petition Date. The Trustee reserves the right to challenge the validity, priority and extent of the Wells Fargo Lien and shall file any adversary proceeding to determine the validity, priority and extent of the Well Fargo Lien within 60 days of the Effective Date. Upon the Effective Date, the 1956 Smith Oak Property will be transferred to the Liquidating Trust and the Liquidating Trustee shall market the 1956 Smith Oak

Page 10 - TRUSTEE'S PLAN OF REORGANIZATION (~~November 24, 2010~~**MARCH 10, 2011**)

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Property for sale.  ~~Pending a closing of the sale of the 1956 Smith Oak Property, the Liquidating Trustee will make monthly interest only payments to Wells Fargo at the rate of 5.00% per annum.~~  If a sale of the 1956 Smith Oak Property has not closed within 18 months of the Effective Date, and there is no judgment entered by the Bankruptcy Court or a court of competent jurisdiction by such date invalidating the Wells Fargo Lien on the 1956 Smith Oak Property, the Liquidating Trustee will abandon the Liquidating Trust's interest in such property and Wells Fargo will be allowed to enforce its rights and remedies against such property.  The sale by the Liquidating Trustee of the 1956 Smith Oak Property shall be free and clear of the Lien of Wells Fargo and the Lien of Wells Fargo, if any, shall be impressed upon the proceeds.  Proceeds from such sale will be distributed to Wells Fargo and/or the Liquidating Trust consistent with the judgment entered by the Bankruptcy Court in the adversary proceeding described above, by further order of Court, or as may be agreed in writing by the Liquidating Trustee and Wells Fargo.

      h.    <u>Class 8 (BAC Home Loans 1920 Smith Oak)</u>.  Class 8 is impaired by the Plan.  BAC Home Loans shall retain its ~~Lien~~<u>lien, if any,</u> against the 1920 Smith Oak Property to the same extent and with the same validity and priority as existed on the Petition Date.  The Trustee reserves the right to challenge the validity, priority and extent of the BAC Home Loans Lien and shall file any adversary proceeding to determine the validity, priority and extent of the BAC Home Loans Lien within 60 days of the Effective Date.  Upon the Effective Date, the 1920 Smith Oak Property will be transferred to the Liquidating Trust and the Liquidating Trustee shall market the 1920 Smith Oak Property for sale.  ~~Pending a closing of the sale of the 1920 Smith Oak Property, the Liquidating Trustee will make monthly interest only payments to BAC Home Loans at the rate of 5.00% per annum.~~  If a sale of the 1920 Smith Oak Property has not closed within 18 months of the Effective Date, and there is no judgment entered by the Bankruptcy Court or a court of competent jurisdiction by such date invalidating the Lien of BAC Home Loans on the 1920 Smith Oak Property, the Liquidating Trustee will abandon the

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Liquidating Trust's interest in such property and BAC Home Loans will be allowed to enforce its rights and remedies against such property. The sale by the Liquidating Trustee of the 1920 Smith Oak Property shall be free and clear of the Lien of BAC Home Loans and the Lien of BAC Home Loans, if any, shall be impressed upon the proceeds. Proceeds from such sale will be distributed to BAC Home Loans and/or the Liquidating Trust consistent with the judgment entered by the Bankruptcy Court in the adversary proceeding described above, by further order of Court, or as may be agreed in writing by the Liquidating Trustee and BAC Home Loans.

      i.    <u>Class 9 (Chase Home Finance 5409 Ivy)</u>. Class 9 is not impaired by the Plan and Chase is conclusively presumed to have accepted the Plan. Chase shall retain its Lien against the Ivy Street Property to the same extent and with the same validity and priority as existed on the Petition Date. The Estate's interest in the Ivy Street Property ~~shall be~~<u>**was**</u> abandoned ~~as of~~<u>**prior to**</u> the Effective Date <u>**by Court order**</u>, and Chase may enforce its rights and remedies against the Ivy Street Property.

      j.    <u>Class 10 (Landers Creswell Second)</u>. Class 10 is not impaired by the Plan and Claudia Landers is conclusively presumed to have accepted the Plan. Claudia Landers shall retain her Lien against the Creswell Property to the same extent and with the same validity and priority as existed on the Petition Date. The Estate's interest in the Creswell Property shall be abandoned as of the Effective Date, and Claudia Landers may enforce her rights and remedies against the Creswell Property. Upon the Effective Date, tenants at such property are directed to remit rents to the Debtor. The Debtor shall be responsible for the return of any deposits collected from the tenants.

      k.    <u>Class 11 (Wafford Wildgoose Subdivision)</u>. Class 11 is not impaired by the Plan and Clarence Wafford and Thelma I. Wafford, husband and wife (the "Waffords") are conclusively presumed to have accepted the Plan. The Waffords shall retain their Lien against the Wildgoose Subdivision Property to the same extent and with the same validity and priority as

Page 12 - TRUSTEE'S PLAN OF REORGANIZATION (~~November 24, 2010~~<u>MARCH 10, 2011</u>)

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

existed on the Petition Date. The Estate's interest in the Wildgoose Subdivision Property shall be abandoned as of the Effective Date, and the Waffords may enforce their rights and remedies against the Wildgoose Subdivision Property.

l.     Class 12 (Unsecured Claims).  The Liquidating Trustee shall make Pro Rata distributions to Holders of Allowed Unsecured Claims from Available Cash following the closing of the sale of the properties in the Liquidating Trust.

m.     Class 13 (Insider Claims).  No distributions will be made on any Claims held by Insiders until all Class 12 Claims are paid in full**, Liens, security agreements, mortgages or deeds of trust on property described in this Plan which purport to secure the Claims of Insiders shall not be retained and shall be extinguished upon the Effective Date**.

**IV.**

**MEANS FOR PLAN EXECUTION**

4.1     Transfer of Assets and Sale.  The Plan will be executed by the transfer and assignment on the Effective Date, pursuant to sections 363 and 365 of the Bankruptcy Code, of the Assets (including the Village East and Smith Oak Properties) to the Liquidating Trust.  The Confirmation Order will provide for the transfer of the Assets to the Liquidating Trust on the Effective Date.  The Liquidating Trustee shall offer the Village East and Smith Oak Properties for sale, close on a sale of the Village East and Smith Oak Properties to the extent possible ~~within 18 months of the Effective Date~~, and distribute the proceeds of sale as set forth in this Plan.  The Liquidating Trustee shall have the power to deliver a deed vesting fee title in the Village East and Smith Oak Properties to a purchaser.  The Trustee is authorized and directed to execute and deliver any additional instruments and documents that may be reasonably necessary or desirable to implement a sale of the Village East and Smith Oak Properties and to take all further action as may be requested by a purchaser for the purpose of assigning, transferring, granting, conveying and conferring to purchaser all of the Village East and Smith Oak Properties. The sale of the Village East and Smith Oak Properties shall be free and clear of all Liens and

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Claims. All such Liens and Claims, shall attach to the sale proceeds to the same extent, priority and validity as they attached to the Village East and Smith Oak Properties. This Plan shall be construed and shall constitute for any and all purposes authorization to the Liquidating Trustee to effect a full and complete general assignment, conveyance and transfer of the Village East and Smith Oak Properties transferring good and marketable title in the Village East and Smith Oak Properties to a purchaser. If any Creditor has filed or recorded a deed of trust, mortgage, financing statement or other instrument, such Creditor shall deliver to the Liquidating Trustee at closing a termination statement, reconveyance or release of such deed of trust, mortgage, financing statement or other instrument. If such termination statement, reconveyance or release of such deed of trust, mortgage, financing statement or other instrument is not delivered, then the Liquidating Trustee is hereby authorized and empowered as part of the closing of the sale, to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such assets and contracts and (b) the purchaser is hereby authorized to file, register or otherwise record a certified copy of the Confirmation Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens and Claims against the Village East and Smith Oak Properties as of the closing date.

The Liquidating Trustee may sell or reduce to cash all of the Assets (including the Village East Property and the Smith Oak Properties) without further order of Court and the Debtor, VE-Development, the Barbara Parmenter Living Trust, Bobbi, LLC, Rip-Con, LLC, Dandy Resorts, LLC, Ginny Holdings, LLC and all entities in which the Debtor has a majority or controlling interest, shall have no standing to contest or oppose such actions by the Liquidating Trustee.

4.2     Funding for the Plan. This Plan shall be funded by (i) Cash on hand as of the Effective Date and (ii) Cash available to the Estate after the Effective Date from, among other things, the prosecution and enforcement of any Avoidance Actions and the liquidation of any other Assets.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

4.3     Deposit Accounts.  The Liquidating Trustee may establish one or more interest-bearing accounts as he determines may be necessary or appropriate to effectuate the provisions of this Plan consistent with section 345 of the Bankruptcy Code and any orders of the Court.

4.4     Engagement of Liquidating Trustee.

a.     Appointment of Liquidating Trustee.  As of the Effective Date, Kenneth S. Eiler shall be deemed to have been appointed Liquidating Trustee by the Court to perform his duties and obligations under this Plan.  The Liquidating Trustee's acitivities after the Effective Date, and the amount of the Liquidating Trustee's fiduciary bond, will not be monitored by the United States trustee.

b.     Compensation.  The combined compensation for the Trustee and the Liquidating Trustee shall be the statutory percentage commission to which the Trustee is entitled under section 326 of the Bankruptcy Code**, or to the extent allowed by the Court, an hourly fee**.  Any expenses of the Liquidating Trustee shall be paid on a monthly basis out of the Assets in accordance with this Plan.

c.     Powers and Duties.  The Liquidating Trustee shall be empowered and directed to (i) hold, manage, administer and distribute the Assets in accordance with this Plan and take such action as may be necessary or appropriate to effect Distributions that are required to be made by the Liquidating Trustee under this Plan, (ii) employ, retain or replace professionals, without prior Court approval, to represent him with respect to his responsibilities hereunder, (iii) object to Claims and resolve Disputed Claims, and enforce and prosecute any Avoidance Actions on behalf of the Estate and compromise and settle the same; and (vi) exercise such powers which the Liquidating Trustee in his discretion deems reasonably necessary or appropriate to effectuate this Plan.

d.     Powers Regarding Bobbi, LLC

The Liquidating Trustee as holder of the 100% membership interests in Bobbi, LLC is authorized to consent to and vote in favor of the appointment of the Liquidating Trustee

Page 15 - TRUSTEE'S PLAN OF REORGANIZATION (November 24, 2010MARCH 10, 2011)

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

as manager of Bobbi, LLC.  The Liquidating Trustee, as the holder of 100% of the membership interests in Bobbi, LLC, and Manager of Bobbi, LLC shall be authorized to consent to and vote in favor of the compromise with Umpqua, and all other transactions and transfers set forth in this Plan.  This Plan and the Confirmation Order shall constitute the specific authorization for the Trustee to execute the necessary deeds, assignments and other instruments and documents on behalf of Bobbi, LLC to carry out the terms of this Plan and to transfer and convey **good and marketable title to** the real or personal property of Bobbi, LLC.

   e. <u>Powers Regarding Other LLCs or Entities in Which the Debtor Has a Majority or Controlling Interest</u>.  The Liquidating Trustee, as the holder of the 100% or controlling membership interest in Dandy Resorts, LLC, Rip-Con, LLC, Ginny Holdings, LLC and any other LLC or entity in which the Debtor holds a majority or controlling interest, is authorized to consent to and vote in favor of the appointment of the Liquidating Trustee as manager of such LLCs or entities, to consent to and vote in favor of the releases, transactions and transfers set forth in this Plan.  This Plan and the Confirmation Order shall constitute the specific authorization for the Trustee to execute the deeds, assignments, releases and reconveyance of deeds of trusts or other security instruments or execute additional documents or instruments on behalf of such LLCs or entities necessary to carry out the terms of this Plan.

   f. <u>Bond</u>.  The Liquidating Trustee shall maintain the fiduciary bond that is currently in place with respect to the Trustee, until the resignation or removal of the Liquidating Trustee or until the Liquidating Trustee's final Distribution.  The face amount of the bond shall at all times be in an amount no less than 125 percent of the total amount of Cash under the Liquidating Trustee's control.  The cost of such bond shall be paid out of the Assets.  Any party in interest may request an order of the Court at any time prior to the Liquidating Trustee's final Distribution that the face amount of the Liquidating Trustee's bond shall be increased or decreased.

   4.5 <u>Distributions to be Made by the Liquidating Trustee</u>.

Page 16 - TRUSTEE'S PLAN OF REORGANIZATION (~~November 24, 2010~~MARCH 10, 2011)

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

a.  <u>Form of Payments</u>.  Distributions to be made by the Liquidating Trustee under this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, at the sole election of the Liquidating Trustee.

b.  <u>Delivery of Distributions</u>.  Except as otherwise agreed to by the Liquidating Trustee in writing, Distributions to be made by the Liquidating Trustee to Holders of Allowed Claims pursuant to this Plan may be delivered by regular mail, postage prepaid, in an envelope addressed as directed in a request served on the Trustee or Liquidating Trustee but if no such request is made, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.  Nothwithstanding anything to the contrary contained herein, the Liquidating Trustee shall not be required to make a final Distribution to Holders of Allowed Claims if the total amount of the funds available to make the Distribution is less than $1,000.  In such event, the Liquidating Trustee may distribute such funds to a charity designated by the Liquidating Trustee.

c.  <u>Reserve Fund</u>.  On the Effective Date (or as soon thereafter as is practicable), the Liquidating Trustee shall establish the Reserve Fund.  All Cash in the Reserve Fund shall at all times be held, managed and administered by the Liquidating Trustee in trust for the benefit of those entities entitled thereto under the terms of this Plan.

d.  <u>Unclaimed Property</u>.  During the Claiming Period applicable to any particular Distribution made by the Liquidating Trustee pursuant to this Plan, Unclaimed Property with respect to such Distribution shall be distributed to the Holders of Allowed Claims entitled thereto upon presentment to the Liquidating Trustee of satisfactory proof of entitlement. On the first day after the expiration of the Claiming Period:  (i) Holders of Allowed Claims previously entitled to such Unclaimed Property shall no longer be entitled thereto, (ii) such Claims shall be deemed disallowed for all purposes and (iii) the then remaining Cash constituting Unclaimed Property with respect to such Distribution shall be redesignated as and become

Page 17 -  TRUSTEE'S PLAN OF REORGANIZATION (November 24, 2010MARCH 10, 2011)

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Available Cash (but without impairing the right of the Liquidating Trustee to use such redesignated funds to satisfy the costs of administering this Plan).

        e.      <u>Time Bar to Cash Payments</u>.  Checks issued by the Liquidating Trustee in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Liquidating Trustee by the Holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of the Claiming Period.  After such date, (i) the Holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under this Plan on account of such voided check or such Claim and (ii) the Unclaimed Property held on account of such voided check or such Claim shall be redesignated as and become Available Cash (but without impairing the right of the Liquidating Trustee to use such funds to satisfy the costs of administering this Plan).

      4.6      <u>Disputed, Contingent and Unliquidated Claims</u>.  Notwithstanding any other provision of the Plan, no Cash or other property shall be distributed hereunder on account of any Disputed Claim, or any Claim that is contingent or unliquidated, until such Claim becomes an Allowed Claim.  From and after the Effective Date, only the Liquidating Trustee and the Debtor shall have the right (except as to applications or requests for allowances of compensation and reimbursement of expenses in favor of the Liquidating Trustee or professionals) to make and file objections to Claims.  In determining the amount of any Distribution to Holders of Allowed Claims in Class 10, the appropriate Distributions required by the Plan shall be made as if all Disputed Claims were Allowed Claims in the Face Amounts claimed by the Holders thereof.  At such time as a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive the Distribution, if any, to which such Holder is then entitled under this Plan.

      4.7      <u>Amendments to Claims</u>.  No Claim may be amended by the Holder thereof at any time after the date that is 30 days after the Effective Date (other than to reduce the amount of the Claim), unless such period is extended by Court order on a motion that is filed with the Court and

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

served on the Liquidating Trustee within such 30 day period.  In addition to the limitations set forth in the preceding sentence, an amendment to a Claim that is made by the Holder thereof after the Effective Date shall be deemed disallowed, time barred and not enforceable against the Estate or the Assets unless proof of such amended Claim is filed with the Court and served on the Liquidating Trustee.

4.8     Disputed Distributions.  In the event of any dispute with the Holder of a Claim as to the right of any entity to receive or retain any Distribution to be made under this Plan, the Liquidating Trustee may, in lieu of making such Distribution, withhold such Distribution until the disposition thereof is determined by the Court.

4.9     Setoff, Recoupment and Defenses.  Nothing contained in the Plan shall constitute a waiver or release by the Trustee of any rights of setoff or recoupment, or of any defense the Estate may have with respect to any Claim (including, without limitation, rights under section 502(d) of the Bankruptcy Code).

4.10    United States Trustee Fees.  Notwithstanding the entry of the Confirmation Order, the Liquidating Trustee shall (i) be responsible for timely payments of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and (ii) provide to the United States Trustee, on or before the 30th day following the close of each calendar quarter, a financial report of all disbursements made on behalf of the Estate (whether or not pursuant to this Plan) during the preceding calendar quarter, or portion thereof, that this chapter 11 case remains open.

4.11    Post-Confirmation Date Fees and Expenses of Professionals and Liquidating Trustee.  After the Confirmation Date, the Liquidating Trustee shall, without the necessity for any Court approval, pay the reasonable expenses of the Liquidating Trustee and the reasonable fees and expenses of the professional persons employed by the Liquidating Trustee in connection with the implementation and consummation of this Plan or with other matters as to which such professionals may be reasonably engaged.  Such fees and expenses shall be paid by the Liquidating Trustee out of Cash on hand in the Reserve Fund within fifteen business days after

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

submission to those parties set forth in the Service List of a detailed invoice therefor.  If a party in interest disputes the reasonableness of any such invoice, the Liquidating Trustee shall timely pay the undisputed portion of such invoice but the disputed portion shall not be paid without a court order.  Any such dispute shall be submitted to the Court for a determination of the reasonableness of such invoice.

4.12   Exculpation; Post-Effective Date Indemnification.  Neither the Trustee nor the Creditors' Committee, nor any of their respective members, officers, directors employees, agents and representatives who were or in the future are members, officers, directors,  employees, agents or representatives, as the case may be, during the Chapter 11 case or while this Plan is being administered, shall have or incur any liability to any Holder of a Claim or the Debtor for any act or omission in connection with or arising out of the Chapter 11 case, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed hereunder, except for such of their own acts or omissions as shall constitute bad faith, willful misconduct or gross negligence and, in all respects, the Trustee and the Committee, and each of their respective members, officers, directors, employees, agents and representatives, shall be entitled to rely upon the advice of legal counsel with respect to their duties and responsibilities under this Plan.  From and after the Effective Date, the Liquidating Trustee and his agents and representatives  shall be entitled to be indemnified by the Liquidating Trust out of the Assets (other than Cash in the Reserve Fund) from and against any and all loss, liability, cost, damage or expense (including legal and other professional expenses incident thereto) which it or any such person may incur or sustain in the exercise or performance of any of the rights, powers or duties under this Plan or which it or any such person may incur or sustain by virtue of serving or having served under this Plan, except for such of their own acts or omissions as shall constitute bad faith, wilful misconduct or gross negligence.

4.13   Closing of the Chapter 11 Case.  As soon as practicable after the Liquidating Trustee's final Distribution, or at such earlier time as the Liquidating Trustee deems appropriate,

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

the Liquidating Trustee shall seek authority from the Court to close the Debtor's chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Debtor's chapter 11 case shall, whether or not specified therein, be without prejudice to the right of any party in interest to reopen the chapter 11 case for any matter over which the Court has retained jurisdiction under this Plan.

## V.

## TREATMENT OF EXECUTORY CONTRACTS

## AND UNEXPIRED LEASES

5.1     Rejection of Executory Contracts and Unexpired Leases.  Except as otherwise provided in the Confirmation Order, effective as of the Effective Date, all executory contracts and unexpired leases of the Debtor (excluding only those that are assumed pursuant to Court order entered prior to the Confirmation Date and those that are the subject of a motion to assume filed by the Trustee prior to the Confirmation Date) shall be deemed to be automatically rejected as of the Effective Date.  The Confirmation Order shall constitute a Court order approving such rejections pursuant to the provisions of sections 365 and 1123(b)(2) of the Bankruptcy Code.

5.2     Claims for Rejection Damages.  Claims for damages arising by reason of the rejection of executory contracts and unexpired leases to which any Debtor is a party shall be classified and treated as Class 10 Claims; provided, however, that any such Claim shall be deemed disallowed, barred forever and not enforceable against the Debtor or any property of the Estate or the Assets unless a proof of claim therefor is filed with the Court and served on the Liquidating Trustee within 30 days after the Confirmation Date (except that if a different date for filing proof of any particular such Claim has been fixed by a Court order entered prior to the Confirmation Date, then by the date so fixed in such Court order).

::ODMA\PCDOCS\PORTLAND\735708\46

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

# VI.

## EFFECT OF PLAN CONFIRMATION

6.1     <u>Injunction</u>.  Except as otherwise specifically provided in this Plan or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to all entities against (i) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the Debtor that was or could have been commenced before the entry of the Confirmation Order, in each case on account of any Claim (other than actions or proceedings brought to enforce any rights or obligations under this Plan or appeals, if any, from the Confirmation Order or with respect to such Claims), (ii) the enforcement against the Debtor, the Estate, the Liquidating Trustee or the Assets of any judgment, award, decree or order obtained before the Petition Date, in each case on account of any Claim, (iii) any act to obtain possession of, or to exercise control over, or to create, perfect or enforce a lien upon, any of the Assets, (iv) the assertion of any setoff, right of subrogation, reimbursement or recoupment of any kind, directly or indirectly, against any obligation due the Estate on account of any Claim and (v) the exercise of any provision contained in any contract, lease or instrument which is or was entered into or issued by the Debtor prior to the Petition Date and which is not cancelled or rejected under the Plan that allows a Creditor to declare, or that declares, a default based upon the filing of the petition in the Debtor's chapter 11 case, the insolvency or financial condition of the Debtor or the subjective insecurity of such Creditor.

6.2     <u>Umpqua Settlement Injunction.</u>  In addition to the injunction set forth in Section 6.1, confirmation of the Plan shall act as a permanent injunction applicable to the Debtor, VE-Development, the Barbara Parmenter Living Trust, Bobbi, LLC, Rip-Con, LLC, Dandy Resorts, LLC, each of whom are forever enjoined from initiating or pursuing against Umpqua any claim, cause or action or liability that has been released under this Plan.  This Plan injunction further prohibits the Debtor, VE-Development, the Barbara Parmenter Living Trust, Bobbi, LLC, Rip-Con, LLC, Dandy Resorts, LLC from filing contesting the foreclosure by Umpqua of its liens,

Page 22 - TRUSTEE'S PLAN OF REORGANIZATION (~~November 24, 2010~~MARCH 10, 2011)

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

including from filing any lawsuit to contest or impede the foreclosure by Umpqua of its trust deeds and security interests on any and all of the Umpqua Properties.

6.3     Binding Effect.  Except as otherwise specifically provided in this Plan or in the Confirmation Order, on and after the Confirmation Date, the provisions of this Plan shall bind each Holder of a Claim, and each of their respective successors, heirs, legal representatives and assigns, whether or not the Claim is impaired under this Plan and whether or not such Holder has filed a proof of claim with the Court or has accepted this Plan.

## VII.

## RETENTION OF JURISDICTION

7.1     Jurisdiction of Bankruptcy Court.  Notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of all matters arising under, arising out of or related to the Debtor's chapter 11 case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.     To classify the Claim of any Creditor, to reexamine Claims that have been allowed for Plan voting purposes and to hear and determine objections to Claims;

b.     To hear and determine any and all adversary proceedings, applications and contested matters, whether pending on or commenced after the Confirmation Date;

c.     To determine the allowance of Claims resulting from the rejection of executory contracts and unexpired leases;

d.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

e.     To issue such orders in aid of execution of this Plan to the extent authorized by section 1142 of the Bankruptcy Code;

f.     To consider any modifications of this Plan and to cure any defect or omission, or reconcile any inconsistency, in this Plan or in any Court order relating to this Plan (including, without limitation, the Confirmation Order);

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

g.      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan;

h.      To recover property of the Estate, wherever located;

i.      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the Liquidating Trustee's final Distribution);

j.      To hear any other matter consistent with the provisions of the Bankruptcy Code; and

k.      To enter a final decree closing the Debtor's chapter 11 case.

7.2     <u>Other Courts of Competent Jurisdiction</u>.  If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter referred to the Court, such abstention, refusal or failure of exercise shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**VIII.**

**MISCELLANEOUS PROVISIONS**

8.1     <u>Election Pursuant to Section 1129(b) of the Bankruptcy Code</u>.  The Trustee hereby requests confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code if the requirements of all provisions of section 1129(a) of the Bankruptcy Code, except paragraph (a)(8) thereof, are met with regard to the Plan.  In determining whether the requirements of section 1129(a)(8) of the Bankruptcy Code have been met, any Class or subclass of a Class that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Court for filing acceptances or rejections of this

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class or subclass.

8.2     Computation of Time Periods.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

8.3     Governing Law.  Except to the extent that the  federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Oregon without giving effect to the principles of conflicts of laws thereof.

8.4     Amendment.  The Trustee reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Trustee may, upon Court order, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or cure any defect or omission, or reconcile any inconsistency, in this Plan or in any Court order relating to the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

///

///

///

///

///

///

///

///

///

///

Page 25 - TRUSTEE'S PLAN OF REORGANIZATION (November 24, 2010MARCH 10, 2011)

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

8.5     Plan Controls.  To the extent the Plan is inconsistent with the disclosure statement relating to this Plan, the provisions of the Plan shall control.

DATED this ~~24~~10th day of ~~November, 2010.~~March, 2011.

 /s/ Kenneth S. Eiler
Kenneth S. Eiler, Chapter 11 Trustee

The below signature of the Trustee's attorney is intended solely to comply with Bankruptcy Rule 9011(a) to the extent it applies to plans of reorganization.

DATED: ~~November 24, 2010~~March 10, 2011
BALL JANIK LLP

By: /s/ David W. Criswell
David W. Criswell, OSB No. 925930

Attorneys for Kenneth Eiler,
Chapter 11 Trustee

Page 26 - TRUSTEE'S PLAN OF REORGANIZATION (~~November 24, 2010~~MARCH 10, 2011)

::ODMA\PCDOCS\PORTLAND\735708\46

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525
Case 09-60875-fra11    Doc 468    Filed 03/10/11

# Exhibit 1
# DEFINITIONS:

<u>1920 Smith Oak Property</u> means the real property and improvements commonly known as 1920-1922 Smith Oak Street, Eugene, Oregon and legally described as LOT 7 IN BLOCK 1, SMITH'S OAK HILL ADDITION, AS PLATTED AND RECORDED IN BOOK 36, PAGE 10, LANE COUNTY OREGON PLAT RECORDS IN LANE COUNTY, OREGON.

<u>1956 Smith Oak Property</u> means the real property and improvements commonly known as 1956-1958 Smith Oak Street, Eugene, Oregon and legally described as LOT 6, IN BLOCK 1, SMITH'S OAK HILL ADDITION, AS PLATTED AND RECORDED IN VOLUME 36, PAGE 10, LANE COUNTY OREGON PLAT RECORDS, IN LANE COUNTY, OREGON.

<u>57th Street Property</u> means the real property and improvements commonly known as 888 57th Street, Springfield, Oregon, and legally described as set forth on **Appendix A** attached.

<u>6304 Main Property</u> means the real property and improvements commonly known as 6304 Main Street, Springfield, Oregon and legally described as set forth on **Appendix B** attached.

<u>Administrative Expense Claim</u> means a Claim that is entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses of preserving the Estate; (b) any actual and necessary costs and expenses of operating the Estate's business after the Petition Date; (c) any allowances of compensation or reimbursement of expenses under sections 330, 331 or 503 of the Bankruptcy Code to the extent of the Allowed Amount thereof, whether fixed before or after the Effective Date; and (d) any fees or charges assessed against the Estate under 28 U.S.C. § 1930, including post-Confirmation Date and post-Effective Date fees and charges.

<u>Allowed Amount</u> means with reference to any Claim (including any Administrative Expense Claim): (a) if the Holder thereof has not filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount of the Claim that is listed in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, as not disputed, contingent or unliquidated; or (b) if the Holder thereof has filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3): (i) the amount stated in such proof of claim, if no objection to such proof of claim has been interposed within any applicable period of limitation fixed by this Plan or a Final Order or (ii) such amount as shall be fixed by Final Order if an objection has been timely interposed; or (c) with respect to an Administrative Expense Claim that requires Court approval as a precondition to payment, such amount as shall be fixed by Final Order; or (d) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code, or from the denial or avoidance of an interest in property of the Estate, if, within 30 days after the judgment for the recovery of money or property, or after the judgment that denies or avoids any such interest, becomes a Final Order, the holder thereof has filed a

**Exhibit 1**
**Page 1 of 6**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

\\PDXDATA\PCDOCS\PORTLAND\735708\46

proof of claim with the Court respecting such Claim and has fully satisfied such judgment; or (e) any Claim allowed under or pursuant to the terms of this Plan; provided, however, that Allowed Amount shall not include interest, penalties or other charges accruing on a Claim after the Petition Date except as specifically provided for in this Plan or in the Confirmation Order.

Allowed Claim means a Claim for which an Allowed Amount has been determined.

Allowed Secured Claim means an Allowed Claim (other than an Administrative Expense Claim) that is secured by a lien, security interest or other charge against or interest in property of the Estate or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value (as set forth in the Plan, or if no value is specified, as determined in accordance with section 506 of the Bankruptcy Code or, if applicable, section 1111(b) of the Bankruptcy Code) of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

Allowed Unsecured Claim means an Allowed Claim that is not an Administrative Expense Claim or an Allowed Secured Claim.

Assets at any particular time means, collectively, all right, title and interest of the Estate in and to the property described in section 541 of the Bankruptcy Code, and includes all Avoidance Actions. The Assets do not include the Lowell Property, the 57th Street Property, the Creswell Property, the Wildgoose Subdivision Property or the 5409 Ivy Property.

Available Cash at any particular time means all Cash held by or for the Liquidating Trust less the aggregate of the Cash then designated for the Income Tax Reserve Fund or General Reserve Fund.

Avoidance Action means any claim or cause of action of the Estate that arises under sections 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

BAC Home Loans means BAC Home Loans Servicing, L.P.

Ballot means a ballot that is used by a holder of a Claim to accept or reject this Plan.

Bankruptcy Code means title 11 of the United States Code, and any amendments thereto applicable to this chapter 11 case, as in effect on the Confirmation Date.

Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure.

~~Carve-Out Amount means Two Hundred Thousand Dollars ($200,000).~~

Cash means cash, cash equivalents and other readily marketable direct obligations of the United States of America.

Chase means Chase Home Finance, LLC.

**Exhibit 1**
**Page 2 of 6**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Case 09-60875-fra11   Doc 468   Filed 03/10/11

**Claim** means a claim or right to payment against the Debtor or the Estate or against property of the Estate.

**Claiming Period** means with respect to any distribution to be made by the Liquidating Trustee pursuant to this Plan, a period of 90 days following such distribution.

**Class** means a category of Claims which are substantially similar to each other, as classified pursuant to the Plan.

**Collateral** means, with respect to any Allowed Secured Claim, the property, or interest in property, of the Estate that secures such Claim.

**Confirmation Date** means the date of entry of the Confirmation Order.

**Confirmation Order** means the Court order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**Court** means the United States District Court for the District of Oregon having jurisdiction over this chapter 11 case and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the District of Oregon, and any court having competent jurisdiction to hear appeals therefrom.

**Creditor** means a Holder of a Claim.

**Creswell Property** means the real property and improvements commonly known as 33681 East River Drive, Creswell, Oregon and legally described as THE EAST 85 FEET OF LOT 46, HILLDALE, AS PLATTED AND RECORDED IN VOLUME 12, PAGE 10, LANE COUNTY OREGON PLAT RECORDS, IN LANE COUNTY, OREGON.

**Debtor** means Barbara Parmenter and the Barbara Parmenter Revocable Trust.

**Disallowed Amount** means, with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the Allowed Amount thereof.

**Disclosure Statement** means the disclosure statement in support of this Plan and all exhibits and schedules thereto, together with any amendments or modifications which may be filed from time to time.

**Disputed Amount** means, with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount of the Claim which the Trustee concedes.

**Disputed Claim** means any Claim for which an Allowed Amount has not yet been determined and with respect to which the Debtor or the Committee has an objection (whether or not a written objection has been filed with the Court).

**Exhibit 1**
**Page 3 of 6**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Distributions mean payments of Cash under this Plan to the Holders of Allowed Claims in Class 10.

Effective Date means the first business day after the Confirmation Date.

Estate means the estate of the Debtor created by section 541 of the Bankruptcy Code.

Face Amount means with reference to any Claim: (a) if the holder thereof has not filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount of the Claim that is listed in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, as not disputed, contingent or unliquidated; or (b) if the holder thereof has filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount stated in such proof of claim.

Final Order means a judgment, order or other decree issued and entered by the Court so long as no stay thereof is in effect, or a stipulation or other agreement entered into which has the same effect with like finality.

General Reserve Fund at any particular time means the aggregate of: (a) Unclaimed Property; and (b) the estimated amount of Cash necessary to pay in full Allowed but unpaid Professional Fees and Professional Fees subject to final application, Administrative Claims, Priority Tax Claims, post-confirmation liquidation expenses and post-confirmation fees of professionals and the Liquidating Trustee.

Holder at any particular time means an entity that holds a Claim.

**Insiders means VE Development LLC, Ginny Holdings, LLC, the Barbara Parmenter Living Trust, Bobbi LLC, Rip-Con LLC, Dandy Resorts LLC, and all entities in which the Debtor has a majority or controlling interest, and any other person or party which meets the definition of "insider" under 11 U.S.C. 101(31).**

Ivy Street Property means the real property and improvements commonly known as 5409 Ivy Street, Springfield, Oregon and legally described as set forth on **Appendix C** attached.

KeyBank means KeyBank National Association.

Lien means a lien, security interest or other charge against or interest in property of the Estate or that is subject to setoff under section 553 of the Bankruptcy Code.

**Liquidating Trust means the Liquidating Trust established pursuant to the Liquidating Trust Agreement.**

**Liquidating Trust Agreement means the Liquidating Trust Agreement for the Estate to be entered into on or before the Effective Date, by and between the Trustee, as Trustor, and Kenneth Eiler, as Liquidating Trustee. Notwithstanding the foregoing, the Trustee shall not enter into the Liquidating Trust Agreement until authorized by an order**

**Exhibit 1**
**Page 4 of 6**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

**of the Bankruptcy Court, which may be the Confirmation Order. A copy of the Liquidating Trust Agreement is attached to the Disclosure Statement as Exhibit 4.**

Liquidating Trustee means Kenneth Eiler, or any successor to him that is appointed by the Court to serve as the Estate's agent under this Plan to administer the Assets, to prosecute, defend or resolve any Avoidance Actions and/or Disputed Claims, to effect Distributions that are required to be made under this Plan and to take such other actions as may be required to comply with the provisions of this Plan. The Liquidating Trustee shall have, in addition to the rights and powers conferred or retained under this Plan, all rights and powers of a trustee appointed pursuant to section 1104 of the Bankruptcy Code.

Lowell Property means the real property and improvements commonly known as 38 West Lakeview Avenue, Lowell, Oregon and legally described as set forth on **Appendix D** attached.

Net Proceeds means proceeds of sale remaining after payment in full of real property taxes due, payment of reasonable and customary title insurance premiums, escrow and closing costs, establishment of an Income Tax Reserve, payment of the fees and costs of the Liquidating Trustee and establishment of a General Reserve Fund.

ODVA means the State of Oregon, Department of Veterans' Affairs.

Petition Date means March 5, 2009.

Plan means this chapter 11 plan and all exhibits and schedules hereto, which are incorporated by reference, together with any amendments or modifications which may be filed from time to time.

Priority Tax Claim means an Allowed Unsecured Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

Professional Fees mean all Administrative Expense Claims of the kind described in paragraph (c) in the definition of Administrative Expense Claim for professional services rendered or expenses incurred prior to the Effective Date.

Pro Rata at any particular time means, with respect to any Claim in Class 10, the same proportion that the Allowed Amount of such Claim bears to the aggregate of the Allowed Amount of all Claims in Class 10.

Service List at any particular time means the Liquidating Trustee, **Umpqua,** the ~~Robinsons~~**Debtor**, the United States ~~trustee~~**Trustee**, and any Creditors who request in writing to the Liquidating Trustee after the Confirmation Date that all notices under the Plan be given to them.

Umpqua means Umpqua Bank.

Unclaimed Property at any particular time means the Cash held by or for the Liquidating Trustee, that is unclaimed by a Creditor following a distribution made by the Liquidating Trustee

**Exhibit 1**
**Page 5 of 6**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Case 09-60875-fra11    Doc 468    Filed 03/10/11    PDX1A\PCDOCS\PORTLAND\735708\46

pursuant to the Plan (including property attributable to checks that have been returned as undeliverable without a proper forwarding address, checks that have not been cashed and checks that were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property).

Unsecured Creditor means a Holder of a Claim that is not an Administrative Expense Claim or an Allowed Secured Claim.

~~Village East Income Tax Reserve Fund means a reserve established by the Liquidating Trustee from proceeds of the sale of real property by the Liquidating Trust for the benefit of the State of Oregon and the United States government to pay any capital gains or other taxes triggered by the sale of the Village East Property.~~

Village East Apartments means that real property and rental apartment complex located at 6330 Main Street, Springfield, Oregon, commonly known as the Village East Apartments, and legally described as set forth on **Appendix E** attached.

Village East Property means the Village East Apartments and the 6304 Main Property.

Wells Fargo means Wells Fargo Bank, N.A.

Wildgoose Subdivision Property means that real property located in Springfield, Oregon, and legally described as set forth on **Appendix F** attached.

**Exhibit 1**
**Page 6 of 6**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

ODMA\PCDOCS\PORTLAND\735708\46

**David W. Criswell, OSB No. 92593**
dcriswell@balljanik.com
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Telephone: (503) 228-2525
Facsimile: (503) 295-1058

Attorneys for Kenneth Eiler, Trustee

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 09-60875-fra11 |
| **BARBARA PARMENTER** | **TRUSTEE'S FIRST AMENDED PLAN OF REORGANIZATION** |
| Debtor. | **(MARCH 10, 2011)** |

Chapter 11 Trustee Kenneth Eiler (the "Trustee") proposes the following Plan of
Reorganization pursuant to the provisions of chapter 11 of the Bankruptcy Code.

## I.

## DEFINITIONS

1.1 <u>Defined Terms</u>. Definitions of certain terms used in this Plan are set forth in the
attached <u>Exhibit 1</u>. Other terms are defined in the text of this Plan. In either case, when a
defined term is used, the first letter of each word in the defined term is capitalized.

1.2 <u>Other Terms</u>. Terms used and not defined in this Plan that are defined in the
Bankruptcy Code or in the Bankruptcy Rules shall have the meanings ascribed to them in the
Bankruptcy Code or in the Bankruptcy Rules, as applicable.

1.3 <u>Interpretation; Application of Definitions; and Rules of Construction</u>. Wherever
from the context it appears appropriate, each term stated in either the singular or the plural shall
include both the singular and the plural and pronouns stated in the masculine, feminine or neuter

**Page 1 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

gender shall include the masculine, feminine and neuter.  For purposes of the Plan:  (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented; and (c) unless otherwise specified, all references in the Plan to Sections and Exhibits are references to Sections and Exhibits of or to the Plan.  The words "herein," "hereto," "hereunder" and other words of similar meaning refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.  All references to dollars means United States dollars.

## II.

## TREATMENT OF ADMINISTRATIVE EXPENSE

## CLAIMS AND PRIORITY CLAIMS

2.1     <u>Administrative Expense Claims</u>.  Administrative Expense Claims that arise or are incurred prior to the Effective Date shall be paid by the Trustee (a) in full, in Cash, on the later of (i) the Effective Date, (ii) when due (in the case of Claims which become due after the Effective Date) or (iii) upon entry of a Final Order if Court approval is a precondition to payment or (b) as may be agreed upon in writing between the Holder and the Trustee.

2.2     <u>Priority Tax Claims</u>.  Priority Tax Claims, if any, shall be paid by the Liquidating Trustee together with interest on the unpaid portion thereof, without penalty of any kind, at the rate required under Section 511 of the Bankruptcy Code on closing of the sale of the Village East Property.

**Page 2 -   TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

# III.

## CLASSIFICATION AND TREATMENT OF

## CLAIMS AND EQUITY INTERESTS

3.1    _Classification_.  All Claims (other than Administrative Expense Claims and Priority Tax Claims) are placed in the following Classes for all purposes.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim qualifies within the description of such other Classes.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

a.    Class 1 (Property Tax Claims) consists of all Allowed Secured Claims for property taxes existing as of the Petition Date.  Class 1a consists of Property Tax Claims secured by real property subject to this Plan other the Village East Property and the Smith Oak Properties.  Class 1b consists of Property Tax Claims secured by the Village East Property and the Smith Oak Properties.

b.    Class 2 (Umpqua Bank) consists of the Allowed Secured Claims of Umpqua Bank ("Umpqua"), which include:

1.    _Class 2.1_  A loan in the original principal amount of $1,500,000.  Said Claim is secured by a deed of trust recorded June 28, 2005, against the Village East Apartments.

2.    _Class 2.2_  A loan in the original principal amount of up to $1,685,000. Said Claim is secured by a deed of trust recorded June 28, 2005 against the Wildgoose Subdivision Property.

3.    _Class 2.3_  A loan in the original principal amount of $100,000, as then modified to $160,000.  Said Claim is secured by a deed of trust recorded September 20, 2007, against the Creswell Property.

**Page 3 -   TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

4.    <u>Class 2.4</u>  A loan in the original principal amount of $88,000  Said Claim is secured by a deed of trust recorded on August 10, 2007 against the 6304 Main Property.

c.    Class 3 (BAC Home Loan/57th Springfield First) consists of the Allowed Secured Claim of BAC Home Loans securing a loan in the maximum principal amount of $332,000.  Said Claim is secured by a deed of trust against the 57th Street Property.

d.    Class 4 (BAC Home Loans/57th Springfield Second) consists of the Allowed Secured Claim of BAC Home Loans securing a loan in the original principal amount of $41,500.  Said Claim is secured by a deed of trust against the 57th Street Property.

e.    Class 5 (KeyBank Lowell) consists of the Allowed Secured Claims of KeyBank securing separate loans in the original principal amounts of $215,000 and $159,000 respectively. Each said Claim is secured by a separate deed of trust against the Lowell Property.

f.    Class 6 (ODVA Lowell) consists of the Allowed Secured Claim of the Oregon Department of Veteran's Affairs securing a loan in the original principal amount of $180,000.  Said Claim is secured by a deed of trust against the Lowell Property.

g.    Class 7 (Wells Fargo 1956 Smith Oak) consists of the Allowed Secured Claim of Wells Fargo, if any, securing a loan in the original principal amount of $112,500.  Said Claim purports to be secured by a deed of trust against the 1956 Smith Oak Property.

h.    Class 8 (BAC Home Loans 1920 Smith Oak) consists of the Allowed Secured Claim of BAC Home Loans, if any, securing a loan in the original principal amount of $125,750.  Said Claim purports to be secured by a deed of trust against the 1920 Smith Oak Property.

i.    Class 9 (Chase 5409 Ivy Street) consists of the Allowed Secured Claim of Chase securing a loan in the original principal amount of $292,000 made by M&T Bank.  Said Claim is secured by a deed of trust against the Ivy Street Property.

j.    Class 10 (Landers Creswell Second) consists of the Allowed Secured Claim of Claudia Landers securing a loan in the original principal amount of $50,000.  Said

**Page 4 -  TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Claim is secured by a second deed of trust against the Creswell Property.

k.     Class 11 (Wafford Wildgoose Subdivision) consists of the Allowed Secured Claim of Clarence Wafford and Thelma I. Wafford, husband and wife, securing a loan in the original principal amount of $100,000.  Said Claim is secured by a deed of trust against a portion of the Wildgoose Subdivision Property.

l.     Class 12 (Unsecured Claims) consists of all Allowed Unsecured Claims not otherwise treated under this Plan.

m.     Class 13 (Insider Claims) consists of the Claims of Bobbi LLC, Rip-Con, LLC, Dandy Resorts, LLC, Ginny Holdings, LLC, The Barbara K. Parmenter Irrevocable Trust, and any person or entity which meets the definition of "insider" under section 101(31) of the Bankruptcy Code.

3.2     Treatment.  The Classes of Claims shall receive the treatment described herein.

a.     Class 1 (Property Tax Claims).  Class 1a is not impaired by the Plan and each Holder of a Class 1a Claim is conclusively presumed to have accepted the Plan.  Class 1b is impaired.  All Holders of Property Tax Claims shall retain their Liens to the same extent and with the same validity and priority as existed on the Petition Date.  Holders of Class 1a Property Tax Claims shall be entitled to enforce their rights and remedies against the real property securing such Claims immediately upon the Effective Date and shall have no further Claims against the Estate, the Liquidating Trust, or the Assets.  Class 1b Property Tax Claims shall accrue interest from the Effective Date on the unpaid portion thereof, without penalty of any kind, at the rate specified in Section 511 of the Bankruptcy Code and shall be paid in full on closing of the sale of the particular real property which secures such Property Tax Claim.

b.     Class 2 (Umpqua).  Class 2 is impaired by the Plan. Each of Umpqua's Class 2 Secured Claims under Sections 506(a) and (b) of Code is deemed allowed, without offset, counterclaim, subordination, charge-off or reduction of any kind or nature (other than the agreed $200,000 to be paid by Umpqua as set forth in this Section 3.2(b)), equal to the sum of

**Page 5 -   TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

outstanding principal, interest, and attorneys' fees as of the effective date of the Plan. Umpqua has and shall have valid, perfected, enforceable, first priority and non-avoidable liens on and security interests in each of the Umpqua Properties, subject only to liens for real property taxes, and other prior liens of record as of the Petition Date.

The automatic stay imposed by 11 U.S.C. § 362(a) and the injunction arising under 11 U.S.C. § 1141 are lifted and permanently and irrevocably vacated as to all properties which secure the Umpqua Class 2 Claims and Umpqua may exercise of all its rights and remedies under its deeds of trust and security agreements and loan documents related to such properties, including, at Umpqua's discretion, by institution of foreclosure proceedings in federal district court or state court; provided, however, that Umpqua shall not obtain entry of a judgment of foreclosure on the Village East Property, or conduct a trustee's sale under the Oregon Trust Deed Act, as applicable, until the one-year anniversary of the Effective Date.

The Estate's interest in the Wildgoose Subdivision Property is deemed abandoned to the Debtor upon the Effective Date.

On or within 30 days of the Effective Date, the Trustee will deliver a non-merger deed (deed in lieu) to the Creswell Property to Umpqua.

Pending a closing of a sale of the Village East Property by the Liquidating Trustee as set forth herein, the Liquidating Trustee shall make monthly interest and principal payments at the rate set forth in the Village East promissory note on the Class 2.1 Allowed Secured Claim of Umpqua from the rents and revenues of the Village East Property.

The Liquidating Trustee shall be permitted to close a sale of the Village East Property within 12 months of the Effective Date. Upon the closing of any sale of the Property, from the sale proceeds, the Trustee shall pay the real estate broker's commission, reasonable and customary closing costs, real property taxes, the unpaid balance of the Umpqua Allowed Class 2.1 Claim and establish a reasonable reserve for capital gains taxes.

**Page 6 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

In the event that the Liquidating Trustee does not close on a sale of the Village East Property within 12 months of the Effective Date, the interest of the Estate in the Village East Property will be abandoned to the Debtor and such abandonment shall be effective 14 days prior to a judicial foreclosure (sheriff's) sale or non-judicial (trustee's) sale under ORS Chapter 86. The Liquidating Trustee shall mail a notice of abandonment to Umpqua and the Debtor to evidence the date of such abandonment. In such event, upon abandonment, the Liquidating Trust and Estate shall have no remaining right, title or interest in the Village East Property and all tax attributes related to the Village East Property shall revert to the Debtor. The Liquidating Trustee shall continue to manage the Village East Property with Guardian Management as on-site manager and be entitled to use the rents and revenues of such property pending a sale by the Liquidating Trustee or abandonment to the Debtor.

Upon the Effective Date, Umpqua shall release the administrative freeze/hold on, and security interest in, and setoff rights and claims to, the approximately $28,000 in Lender account number 970115002 to allow the Liquidating Trustee access to such funds to pay as Administrative Expense Claims or for operating purposes

On the last day of the ninth month following the Effective Date, Umpqua will pay $200,000 in Cash to the Liquidating Trustee in settlement of the Trustee and Estate's Code Section 506(c) claims and in consideration of the release and injunction set forth in this Section and section 6.2 of the Plan.

Upon the Effective Date, Umpqua and its employees, affiliates, agents and representatives are released and forever discharged from all claims, causes of action and liabilities of any type whatsoever, known or unknown, that are held in whole or in part by any of the Releasing Parties (as defined below). The Releasing Parties include Debtor, the Trustee, VE-Development, the Barbara Parmenter Living Trust, Bobbi, LLC, Rip-Con, LLC, Dandy Resorts, LLC, Ginny Holdings, LLC and all entities in which the Debtor has a majority or controlling interest, and the Bankruptcy Estate. This Plan and the order confirming the Plan shall constitute

**Page 7 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

and serve as a mandatory injunction against the Releasing Parties who are forever enjoined from initiating or pursuing against Umpqua any claim, cause or action or liability that has been released under this Plan.  This Plan injunction shall prohibit the Debtor and all entities controlled by the Debtor or in which the Debtor has a majority interest from contesting the foreclosure by Umpqua of its Liens, including from filing any lawsuit to contest or impede the foreclosure by Umpqua of its trust deeds and security interests on any and all of the Umpqua Properties.  The release and permanent injunction set forth in this section and section 6.2 of the Plan shall preclude and prohibit the Debtor, VE-Development, the Barbara Parmenter Living Trust, Bobbi, LLC, Rip-Con, LLC, Dandy Resorts, LLC, Ginny Holdings, LLC and all entities in which the Debtor has a majority or controlling interest from interfering in any way with any and all enforcement actions by Umpqua.

      c.    <u>Class 3 (BAC Home Loans/57th Springfield First)</u>.  Class 3 is not impaired by the Plan and BAC Home Loans is conclusively presumed to have accepted the Plan.  BAC Home Loans shall retain its Lien against the 57th Street Property to the same extent and with the same validity and priority as existed on the Petition Date.  The Estate's interest in the 57th Street Property was abandoned prior to the Effective Date by Court order, and BAC Home Loans may enforce its rights and remedies against the 57th Street Property.  Tenants at such property are directed to remit rents to the Debtor. The Debtor shall be responsible for the return of any deposits collected from the tenants.

      d.    <u>Class 4 (BAC Home Loans/57th Springfield Second)</u>.  Class 4 is not impaired by the Plan and BAC Home Loans is conclusively presumed to have accepted the Plan. BAC Home Loans shall retain its Lien against the 57th Street Property to the same extent and with the same validity and priority as existed on the Petition Date.  The Estate's interest in the 57th Street Property was abandoned prior the Effective Date by Court order, and BAC Home Loans may enforce its rights and remedies against the 57th Street Property.  Tenants at such property are directed to remit rents to the Debtor. The Debtor shall be responsible for the return

::ODMA\PCDOCS\PORTLAND\735708\6

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

of any deposits collected from the tenants.

   e. <u>Class 5 (KeyBank Lowell)</u>.  Class 5 is not impaired by the Plan and KeyBank is conclusively presumed to have accepted the Plan.  KeyBank shall retain its Lien against the Lowell Property to the same extent and with the same validity and priority as existed on the Petition Date.  The Estate's interest in the Lowell Property was abandoned prior to the Effective Date by Court order, and KeyBank may enforce its rights and remedies against the Lowell Property.  Tenants at such property are directed to remit rents to the Debtor. The Debtor shall be responsible for the return of any deposits collected from the tenants.

   f. <u>Class 6 (ODVA Lowell)</u>.  Class 6 is not impaired by the Plan and ODVA is conclusively presumed to have accepted the Plan.  ODVA shall retain its Lien against the Lowell Property to the same extent and with the same validity and priority as existed on the Petition Date.  The Estate's interest in the Lowell Property was abandoned prior to the Effective Date by Court order, and ODVA may enforce its rights and remedies against the Lowell Property.  Tenants at such property are directed to remit rents to the Debtor. The Debtor shall be responsible for the return of any deposits collected from the tenants.

   g. <u>Class 7 (Wells Fargo 1956 Smith Oak)</u>.  Class 7 is impaired by the Plan. Wells Fargo shall retain its lien, if any, against the 1956 Smith Oak Property to the same extent and with the same validity and priority as existed on the Petition Date.  The Trustee reserves the right to challenge the validity, priority and extent of the Wells Fargo Lien and shall file any adversary proceeding to determine the validity, priority and extent of the Well Fargo Lien within 60 days of the Effective Date.  Upon the Effective Date, the 1956 Smith Oak Property will be transferred to the Liquidating Trust and the Liquidating Trustee shall market the 1956 Smith Oak Property for sale.  If a sale of the 1956 Smith Oak Property has not closed within 18 months of the Effective Date, and there is no judgment entered by the Bankruptcy Court or a court of competent jurisdiction by such date invalidating the Wells Fargo Lien on the 1956 Smith Oak Property, the Liquidating Trustee will abandon the Liquidating Trust's interest in such property

**Page 9 -  TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

and Wells Fargo will be allowed to enforce its rights and remedies against such property. The sale by the Liquidating Trustee of the 1956 Smith Oak Property shall be free and clear of the Lien of Wells Fargo and the Lien of Wells Fargo, if any, shall be impressed upon the proceeds. Proceeds from such sale will be distributed to Wells Fargo and/or the Liquidating Trust consistent with the judgment entered by the Bankruptcy Court in the adversary proceeding described above, by further order of Court, or as may be agreed in writing by the Liquidating Trustee and Wells Fargo.

       h.    <u>Class 8 (BAC Home Loans 1920 Smith Oak)</u>. Class 8 is impaired by the Plan. BAC Home Loans shall retain its lien, if any, against the 1920 Smith Oak Property to the same extent and with the same validity and priority as existed on the Petition Date. The Trustee reserves the right to challenge the validity, priority and extent of the BAC Home Loans Lien and shall file any adversary proceeding to determine the validity, priority and extent of the BAC Home Loans Lien within 60 days of the Effective Date. Upon the Effective Date, the 1920 Smith Oak Property will be transferred to the Liquidating Trust and the Liquidating Trustee shall market the 1920 Smith Oak Property for sale. If a sale of the 1920 Smith Oak Property has not closed within 18 months of the Effective Date, and there is no judgment entered by the Bankruptcy Court or a court of competent jurisdiction by such date invalidating the Lien of BAC Home Loans on the 1920 Smith Oak Property, the Liquidating Trustee will abandon the Liquidating Trust's interest in such property and BAC Home Loans will be allowed to enforce its rights and remedies against such property. The sale by the Liquidating Trustee of the 1920 Smith Oak Property shall be free and clear of the Lien of BAC Home Loans and the Lien of BAC Home Loans, if any, shall be impressed upon the proceeds. Proceeds from such sale will be distributed to BAC Home Loans and/or the Liquidating Trust consistent with the judgment entered by the Bankruptcy Court in the adversary proceeding described above, by further order of Court, or as may be agreed in writing by the Liquidating Trustee and BAC Home Loans.

**Page 10 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

i. **Class 9 (Chase Home Finance 5409 Ivy)**. Class 9 is not impaired by the Plan and Chase is conclusively presumed to have accepted the Plan. Chase shall retain its Lien against the Ivy Street Property to the same extent and with the same validity and priority as existed on the Petition Date. The Estate's interest in the Ivy Street Property was abandoned prior to the Effective Date by Court order, and Chase may enforce its rights and remedies against the Ivy Street Property.

j. **Class 10 (Landers Creswell Second)**. Class 10 is not impaired by the Plan and Claudia Landers is conclusively presumed to have accepted the Plan. Claudia Landers shall retain her Lien against the Creswell Property to the same extent and with the same validity and priority as existed on the Petition Date. The Estate's interest in the Creswell Property shall be abandoned as of the Effective Date, and Claudia Landers may enforce her rights and remedies against the Creswell Property. Upon the Effective Date, tenants at such property are directed to remit rents to the Debtor. The Debtor shall be responsible for the return of any deposits collected from the tenants.

k. **Class 11 (Wafford Wildgoose Subdivision)**. Class 11 is not impaired by the Plan and Clarence Wafford and Thelma I. Wafford, husband and wife (the "Waffords") are conclusively presumed to have accepted the Plan. The Waffords shall retain their Lien against the Wildgoose Subdivision Property to the same extent and with the same validity and priority as existed on the Petition Date. The Estate's interest in the Wildgoose Subdivision Property shall be abandoned as of the Effective Date, and the Waffords may enforce their rights and remedies against the Wildgoose Subdivision Property.

l. **Class 12 (Unsecured Claims)**. The Liquidating Trustee shall make Pro Rata distributions to Holders of Allowed Unsecured Claims from Available Cash following the closing of the sale of the properties in the Liquidating Trust.

m. **Class 13 (Insider Claims)**. No distributions will be made on any Claims held by Insiders until all Class 12 Claims are paid in full. Liens, security agreements, mortgages

**Page 11 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

or deeds of trust on property described in this Plan which purport to secure the Claims of Insiders shall not be retained and shall be extinguished upon the Effective Date.

## IV.

## MEANS FOR PLAN EXECUTION

4.1     <u>Transfer of Assets and Sale</u>.  The Plan will be executed by the transfer and assignment on the Effective Date, pursuant to sections 363 and 365 of the Bankruptcy Code, of the Assets (including the Village East and Smith Oak Properties) to the Liquidating Trust.  The Confirmation Order will provide for the transfer of the Assets to the Liquidating Trust on the Effective Date.  The Liquidating Trustee shall offer the Village East and Smith Oak Properties for sale, close on a sale of the Village East and Smith Oak Properties to the extent possible, and distribute the proceeds of sale as set forth in this Plan.  The Liquidating Trustee shall have the power to deliver a deed vesting fee title in the Village East and Smith Oak Properties to a purchaser.  The Trustee is authorized and directed to execute and deliver any additional instruments and documents that may be reasonably necessary or desirable to implement a sale of the Village East and Smith Oak Properties and to take all further action as may be requested by a purchaser for the purpose of assigning, transferring, granting, conveying and conferring to purchaser all of the Village East and Smith Oak Properties.   The sale of the Village East and Smith Oak Properties shall be free and clear of all Liens and Claims.  All such Liens and Claims, shall attach to the sale proceeds to the same extent, priority and validity as they attached to the Village East and Smith Oak Properties.  This Plan shall be construed and shall constitute for any and all purposes authorization to the Liquidating Trustee to effect a full and complete general assignment, conveyance and transfer of the Village East and Smith Oak Properties transferring good and marketable title in the Village East and Smith Oak Properties to a purchaser.  If any Creditor has filed or recorded a deed of trust, mortgage, financing statement or other instrument, such Creditor shall deliver to the Liquidating Trustee at closing a termination statement, reconveyance or release of such deed of trust, mortgage, financing statement or other instrument.

::ODMA\PCDOCS\PORTLAND\735708\6

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Case 09-60875-fra11    Doc 468    Filed 03/10/11

If such termination statement, reconveyance or release of such deed of trust, mortgage, financing statement or other instrument is not delivered, then the Liquidating Trustee is hereby authorized and empowered as part of the closing of the sale, to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such assets and contracts and (b) the purchaser is hereby authorized to file, register or otherwise record a certified copy of the Confirmation Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens and Claims against the Village East and Smith Oak Properties as of the closing date.

The Liquidating Trustee may sell or reduce to cash all of the Assets (including the Village East Property and the Smith Oak Properties) without further order of Court and the Debtor, VE-Development, the Barbara Parmenter Living Trust, Bobbi, LLC, Rip-Con, LLC, Dandy Resorts, LLC, Ginny Holdings, LLC and all entities in which the Debtor has a majority or controlling interest, shall have no standing to contest or oppose such actions by the Liquidating Trustee.

4.2     Funding for the Plan.  This Plan shall be funded by (i) Cash on hand as of the Effective Date and (ii) Cash available to the Estate after the Effective Date from, among other things, the prosecution and enforcement of any Avoidance Actions and the liquidation of any other Assets.

4.3     Deposit Accounts.  The Liquidating Trustee may establish one or more interest-bearing accounts as he determines may be necessary or appropriate to effectuate the provisions of this Plan consistent with section 345 of the Bankruptcy Code and any orders of the Court.

4.4     Engagement of Liquidating Trustee.

a.     Appointment of Liquidating Trustee.  As of the Effective Date, Kenneth S. Eiler shall be deemed to have been appointed Liquidating Trustee by the Court to perform his duties and obligations under this Plan.  The Liquidating Trustee's acitivities after the Effective Date, and the amount of the Liquidating Trustee's fiduciary bond, will not be monitored by the United States trustee.

**Page 13 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

b. <u>Compensation</u>.  The combined compensation for the Trustee and the Liquidating Trustee shall be the statutory percentage commission to which the Trustee is entitled under section 326 of the Bankruptcy Code, or to the extent allowed by the Court, an hourly fee. Any expenses of the Liquidating Trustee shall be paid on a monthly basis out of the Assets in accordance with this Plan.

c. <u>Powers and Duties</u>.  The Liquidating Trustee shall be empowered and directed to (i) hold, manage, administer and distribute the Assets in accordance with this Plan and take such action as may be necessary or appropriate to effect Distributions that are required to be made by the Liquidating Trustee under this Plan, (ii) employ, retain or replace professionals, without prior Court approval, to represent him with respect to his responsibilities hereunder, (iii) object to Claims and resolve Disputed Claims, and enforce and prosecute any Avoidance Actions on behalf of the Estate and compromise and settle the same; and (vi) exercise such powers which the Liquidating Trustee in his discretion deems reasonably necessary or appropriate to effectuate this Plan.

d. <u>Powers Regarding Bobbi, LLC</u>

The Liquidating Trustee as holder of the 100% membership interests in Bobbi, LLC is authorized to consent to and vote in favor of the appointment of the Liquidating Trustee as manager of Bobbi, LLC.  The Liquidating Trustee, as the holder of 100% of the membership interests in Bobbi, LLC, and Manager of Bobbi, LLC shall be authorized to consent to and vote in favor of the compromise with Umpqua, and all other transactions and transfers set forth in this Plan.  This Plan and the Confirmation Order shall constitute the specific authorization for the Trustee to execute the necessary deeds, assignments and other instruments and documents on behalf of Bobbi, LLC to carry out the terms of this Plan and to transfer and convey good and marketable title to the real or personal property of Bobbi, LLC.

e. <u>Powers Regarding Other LLCs or Entities in Which the Debtor Has a Majority or Controlling Interest</u>.  The Liquidating Trustee, as the holder of the 100% or

**Page 14 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

controlling membership interest in Dandy Resorts, LLC, Rip-Con, LLC, Ginny Holdings, LLC and any other LLC or entity in which the Debtor holds a majority or controlling interest, is authorized to consent to and vote in favor of the appointment of the Liquidating Trustee as manager of such LLCs or entities, to consent to and vote in favor of the releases, transactions and transfers set forth in this Plan. This Plan and the Confirmation Order shall constitute the specific authorization for the Trustee to execute the deeds, assignments, releases and reconveyance of deeds of trusts or other security instruments or execute additional documents or instruments on behalf of such LLCs or entities necessary to carry out the terms of this Plan.

f.     Bond. The Liquidating Trustee shall maintain the fiduciary bond that is currently in place with respect to the Trustee, until the resignation or removal of the Liquidating Trustee or until the Liquidating Trustee's final Distribution. The face amount of the bond shall at all times be in an amount no less than 125 percent of the total amount of Cash under the Liquidating Trustee's control. The cost of such bond shall be paid out of the Assets. Any party in interest may request an order of the Court at any time prior to the Liquidating Trustee's final Distribution that the face amount of the Liquidating Trustee's bond shall be increased or decreased.

4.5     Distributions to be Made by the Liquidating Trustee.

a.     Form of Payments. Distributions to be made by the Liquidating Trustee under this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, at the sole election of the Liquidating Trustee.

b.     Delivery of Distributions. Except as otherwise agreed to by the Liquidating Trustee in writing, Distributions to be made by the Liquidating Trustee to Holders of Allowed Claims pursuant to this Plan may be delivered by regular mail, postage prepaid, in an envelope addressed as directed in a request served on the Trustee or Liquidating Trustee but if no such request is made, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in

**Page 15 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

a proof of claim duly filed with the Court, to such address. Nothwithstanding anything to the contrary contained herein, the Liquidating Trustee shall not be required to make a final Distribution to Holders of Allowed Claims if the total amount of the funds available to make the Distribution is less than $1,000. In such event, the Liquidating Trustee may distribute such funds to a charity designated by the Liquidating Trustee.

       c.     <u>Reserve Fund</u>. On the Effective Date (or as soon thereafter as is practicable), the Liquidating Trustee shall establish the Reserve Fund. All Cash in the Reserve Fund shall at all times be held, managed and administered by the Liquidating Trustee in trust for the benefit of those entities entitled thereto under the terms of this Plan.

       d.     <u>Unclaimed Property</u>. During the Claiming Period applicable to any particular Distribution made by the Liquidating Trustee pursuant to this Plan, Unclaimed Property with respect to such Distribution shall be distributed to the Holders of Allowed Claims entitled thereto upon presentment to the Liquidating Trustee of satisfactory proof of entitlement. On the first day after the expiration of the Claiming Period: (i) Holders of Allowed Claims previously entitled to such Unclaimed Property shall no longer be entitled thereto, (ii) such Claims shall be deemed disallowed for all purposes and (iii) the then remaining Cash constituting Unclaimed Property with respect to such Distribution shall be redesignated as and become Available Cash (but without impairing the right of the Liquidating Trustee to use such redesignated funds to satisfy the costs of administering this Plan).

       e.     <u>Time Bar to Cash Payments</u>. Checks issued by the Liquidating Trustee in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Liquidating Trustee by the Holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of the Claiming Period. After such date, (i) the Holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under this Plan on account of such voided check or such Claim and

**Page 16 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

(ii) the Unclaimed Property held on account of such voided check or such Claim shall be redesignated as and become Available Cash (but without impairing the right of the Liquidating Trustee to use such funds to satisfy the costs of administering this Plan).

      4.6    <u>Disputed, Contingent and Unliquidated Claims</u>. Notwithstanding any other provision of the Plan, no Cash or other property shall be distributed hereunder on account of any Disputed Claim, or any Claim that is contingent or unliquidated, until such Claim becomes an Allowed Claim. From and after the Effective Date, only the Liquidating Trustee and the Debtor shall have the right (except as to applications or requests for allowances of compensation and reimbursement of expenses in favor of the Liquidating Trustee or professionals) to make and file objections to Claims. In determining the amount of any Distribution to Holders of Allowed Claims in Class 10, the appropriate Distributions required by the Plan shall be made as if all Disputed Claims were Allowed Claims in the Face Amounts claimed by the Holders thereof. At such time as a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive the Distribution, if any, to which such Holder is then entitled under this Plan.

      4.7    <u>Amendments to Claims</u>. No Claim may be amended by the Holder thereof at any time after the date that is 30 days after the Effective Date (other than to reduce the amount of the Claim), unless such period is extended by Court order on a motion that is filed with the Court and served on the Liquidating Trustee within such 30 day period. In addition to the limitations set forth in the preceding sentence, an amendment to a Claim that is made by the Holder thereof after the Effective Date shall be deemed disallowed, time barred and not enforceable against the Estate or the Assets unless proof of such amended Claim is filed with the Court and served on the Liquidating Trustee.

      4.8    <u>Disputed Distributions</u>. In the event of any dispute with the Holder of a Claim as to the right of any entity to receive or retain any Distribution to be made under this Plan, the Liquidating Trustee may, in lieu of making such Distribution, withhold such Distribution until the disposition thereof is determined by the Court.

**Page 17 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

4.9    Setoff, Recoupment and Defenses.  Nothing contained in the Plan shall constitute a waiver or release by the Trustee of any rights of setoff or recoupment, or of any defense the Estate may have with respect to any Claim (including, without limitation, rights under section 502(d) of the Bankruptcy Code).

4.10    United States Trustee Fees.  Notwithstanding the entry of the Confirmation Order, the Liquidating Trustee shall (i) be responsible for timely payments of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and (ii) provide to the United States Trustee, on or before the 30th day following the close of each calendar quarter, a financial report of all disbursements made on behalf of the Estate (whether or not pursuant to this Plan) during the preceding calendar quarter, or portion thereof, that this chapter 11 case remains open.

4.11    Post-Confirmation Date Fees and Expenses of Professionals and Liquidating Trustee.  After the Confirmation Date, the Liquidating Trustee shall, without the necessity for any Court approval, pay the reasonable expenses of the Liquidating Trustee and the reasonable fees and expenses of the professional persons employed by the Liquidating Trustee in connection with the implementation and consummation of this Plan or with other matters as to which such professionals may be reasonably engaged.  Such fees and expenses shall be paid by the Liquidating Trustee out of Cash on hand in the Reserve Fund within fifteen business days after submission to those parties set forth in the Service List of a detailed invoice therefor.  If a party in interest disputes the reasonableness of any such invoice, the Liquidating Trustee shall timely pay the undisputed portion of such invoice but the disputed portion shall not be paid without a court order.  Any such dispute shall be submitted to the Court for a determination of the reasonableness of such invoice.

4.12    Exculpation; Post-Effective Date Indemnification.  Neither the Trustee nor the Creditors' Committee, nor any of their respective members, officers, directors employees, agents and representatives who were or in the future are members, officers, directors,  employees, agents or representatives, as the case may be, during the Chapter 11 case or while this Plan is being

**Page 18 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

administered, shall have or incur any liability to any Holder of a Claim or the Debtor for any act or omission in connection with or arising out of the Chapter 11 case, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed hereunder, except for such of their own acts or omissions as shall constitute bad faith, willful misconduct or gross negligence and, in all respects, the Trustee and the Committee, and each of their respective members, officers, directors, employees, agents and representatives, shall be entitled to rely upon the advice of legal counsel with respect to their duties and responsibilities under this Plan.  From and after the Effective Date, the Liquidating Trustee and his agents and representatives  shall be entitled to be indemnified by the Liquidating Trust out of the Assets from and against any and all loss, liability, cost, damage or expense (including legal and other professional expenses incident thereto) which it or any such person may incur or sustain in the exercise or performance of any of the rights, powers or duties under this Plan or which it or any such person may incur or sustain by virtue of serving or having served under this Plan, except for such of their own acts or omissions as shall constitute bad faith, wilful misconduct or gross negligence.

     4.13   <u>Closing of the Chapter 11 Case</u>.  As soon as practicable after the Liquidating Trustee's final Distribution, or at such earlier time as the Liquidating Trustee deems appropriate, the Liquidating Trustee shall seek authority from the Court to close the Debtor's chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules; <u>provided</u>, <u>however</u>, that entry of a final decree closing the Debtor's chapter 11 case shall, whether or not specified therein, be without prejudice to the right of any party in interest to reopen the chapter 11 case for any matter over which the Court has retained jurisdiction under this Plan.

**Page 19 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

## V.

## TREATMENT OF EXECUTORY CONTRACTS

## AND UNEXPIRED LEASES

5.1 <u>Rejection of Executory Contracts and Unexpired Leases</u>. Except as otherwise provided in the Confirmation Order, effective as of the Effective Date, all executory contracts and unexpired leases of the Debtor (excluding only those that are assumed pursuant to Court order entered prior to the Confirmation Date and those that are the subject of a motion to assume filed by the Trustee prior to the Confirmation Date) shall be deemed to be automatically rejected as of the Effective Date. The Confirmation Order shall constitute a Court order approving such rejections pursuant to the provisions of sections 365 and 1123(b)(2) of the Bankruptcy Code.

5.2 <u>Claims for Rejection Damages</u>. Claims for damages arising by reason of the rejection of executory contracts and unexpired leases to which any Debtor is a party shall be classified and treated as Class 10 Claims; <u>provided</u>, <u>however</u>, that any such Claim shall be deemed disallowed, barred forever and not enforceable against the Debtor or any property of the Estate or the Assets unless a proof of claim therefor is filed with the Court and served on the Liquidating Trustee within 30 days after the Confirmation Date (except that if a different date for filing proof of any particular such Claim has been fixed by a Court order entered prior to the Confirmation Date, then by the date so fixed in such Court order).

## VI.

## EFFECT OF PLAN CONFIRMATION

6.1 <u>Injunction</u>. Except as otherwise specifically provided in this Plan or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to all entities against (i) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the Debtor that was or could have been commenced before the entry of the Confirmation Order, in each case on account of any Claim (other than actions or proceedings brought to enforce any rights or obligations

**Page 20 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

under this Plan or appeals, if any, from the Confirmation Order or with respect to such Claims), (ii) the enforcement against the Debtor, the Estate, the Liquidating Trustee or the Assets of any judgment, award, decree or order obtained before the Petition Date, in each case on account of any Claim, (iii) any act to obtain possession of, or to exercise control over, or to create, perfect or enforce a lien upon, any of the Assets, (iv) the assertion of any setoff, right of subrogation, reimbursement or recoupment of any kind, directly or indirectly, against any obligation due the Estate on account of any Claim and (v) the exercise of any provision contained in any contract, lease or instrument which is or was entered into or issued by the Debtor prior to the Petition Date and which is not cancelled or rejected under the Plan that allows a Creditor to declare, or that declares, a default based upon the filing of the petition in the Debtor's chapter 11 case, the insolvency or financial condition of the Debtor or the subjective insecurity of such Creditor.

6.2 _Umpqua Settlement Injunction._ In addition to the injunction set forth in Section 6.1, confirmation of the Plan shall act as a permanent injunction applicable to the Debtor, VE-Development, the Barbara Parmenter Living Trust, Bobbi, LLC, Rip-Con, LLC, Dandy Resorts, LLC, each of whom are forever enjoined from initiating or pursuing against Umpqua any claim, cause or action or liability that has been released under this Plan. This Plan injunction further prohibits the Debtor, VE-Development, the Barbara Parmenter Living Trust, Bobbi, LLC, Rip-Con, LLC, Dandy Resorts, LLC from filing contesting the foreclosure by Umpqua of its liens, including from filing any lawsuit to contest or impede the foreclosure by Umpqua of its trust deeds and security interests on any and all of the Umpqua Properties.

6.3 _Binding Effect_. Except as otherwise specifically provided in this Plan or in the Confirmation Order, on and after the Confirmation Date, the provisions of this Plan shall bind each Holder of a Claim, and each of their respective successors, heirs, legal representatives and assigns, whether or not the Claim is impaired under this Plan and whether or not such Holder has filed a proof of claim with the Court or has accepted this Plan.

**Page 21 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

# VII.

# RETENTION OF JURISDICTION

7.1    _Jurisdiction of Bankruptcy Court_.  Notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of all matters arising under, arising out of or related to the Debtor's chapter 11 case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.      To classify the Claim of any Creditor, to reexamine Claims that have been allowed for Plan voting purposes and to hear and determine objections to Claims;

b.      To hear and determine any and all adversary proceedings, applications and contested matters, whether pending on or commenced after the Confirmation Date;

c.      To determine the allowance of Claims resulting from the rejection of executory contracts and unexpired leases;

d.      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

e.      To issue such orders in aid of execution of this Plan to the extent authorized by section 1142 of the Bankruptcy Code;

f.      To consider any modifications of this Plan and to cure any defect or omission, or reconcile any inconsistency, in this Plan or in any Court order relating to this Plan (including, without limitation, the Confirmation Order);

g.      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan;

h.      To recover property of the Estate, wherever located;

i.      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and

**Page 22 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

::ODMA\PCDOCS\PORTLAND\735708\6

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Case 09-60875-fra11    Doc 468    Filed 03/10/11

including, the Liquidating Trustee's final Distribution);

        j.      To hear any other matter consistent with the provisions of the Bankruptcy Code; and

        k.      To enter a final decree closing the Debtor's chapter 11 case.

    7.2    <u>Other Courts of Competent Jurisdiction</u>.  If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter referred to the Court, such abstention, refusal or failure of exercise shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## VIII.

## MISCELLANEOUS PROVISIONS

    8.1    <u>Election Pursuant to Section 1129(b) of the Bankruptcy Code</u>.  The Trustee hereby requests confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code if the requirements of all provisions of section 1129(a) of the Bankruptcy Code, except paragraph (a)(8) thereof, are met with regard to the Plan.  In determining whether the requirements of section 1129(a)(8) of the Bankruptcy Code have been met, any Class or subclass of a Class that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Court for filing acceptances or rejections of this Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class or subclass.

    8.2    <u>Computation of Time Periods</u>.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

    8.3    <u>Governing Law</u>.  Except to the extent that the  federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in

**Page 23 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

Ball Janik llp
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

accordance with, the laws of the State of Oregon without giving effect to the principles of conflicts of laws thereof.

8.4     Amendment.  The Trustee reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Trustee may, upon Court order, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or cure any defect or omission, or reconcile any inconsistency, in this Plan or in any Court order relating to the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

8.5     Plan Controls.  To the extent the Plan is inconsistent with the disclosure statement relating to this Plan, the provisions of the Plan shall control.

DATED this 10th day of March, 2011.


  /s/ Kenneth S. Eiler
Kenneth S. Eiler, Chapter 11 Trustee

The below signature of the Trustee's attorney is intended solely to comply with Bankruptcy Rule 9011(a) to the extent it applies to plans of reorganization.

DATED: March 10, 2011

BALL JANIK LLP


By:  /s/ David W. Criswell
    David W. Criswell, OSB No. 925930

    Attorneys for Kenneth Eiler,
    Chapter 11 Trustee


**Page 24 - TRUSTEE'S PLAN OF REORGANIZATION (MARCH 10, 2011)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

# Exhibit 1
# DEFINITIONS:

<u>1920 Smith Oak Property</u> means the real property and improvements commonly known as 1920-1922 Smith Oak Street, Eugene, Oregon and legally described as LOT 7 IN BLOCK 1, SMITH'S OAK HILL ADDITION, AS PLATTED AND RECORDED IN BOOK 36, PAGE 10, LANE COUNTY OREGON PLAT RECORDS IN LANE COUNTY, OREGON.

<u>1956 Smith Oak Property</u> means the real property and improvements commonly known as 1956-1958 Smith Oak Street, Eugene, Oregon and legally described as LOT 6, IN BLOCK 1, SMITH'S OAK HILL ADDITION, AS PLATTED AND RECORDED IN VOLUME 36, PAGE 10, LANE COUNTY OREGON PLAT RECORDS, IN LANE COUNTY, OREGON.

<u>57th Street Property</u> means the real property and improvements commonly known as 888 57th Street, Springfield, Oregon, and legally described as set forth on **Appendix A** attached.

<u>6304 Main Property</u> means the real property and improvements commonly known as 6304 Main Street, Springfield, Oregon and legally described as set forth on **Appendix B** attached.

<u>Administrative Expense Claim</u> means a Claim that is entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses of preserving the Estate; (b) any actual and necessary costs and expenses of operating the Estate's business after the Petition Date; (c) any allowances of compensation or reimbursement of expenses under sections 330, 331 or 503 of the Bankruptcy Code to the extent of the Allowed Amount thereof, whether fixed before or after the Effective Date; and (d) any fees or charges assessed against the Estate under 28 U.S.C. § 1930, including post-Confirmation Date and post-Effective Date fees and charges.

<u>Allowed Amount</u> means with reference to any Claim (including any Administrative Expense Claim): (a) if the Holder thereof has not filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount of the Claim that is listed in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, as not disputed, contingent or unliquidated; or (b) if the Holder thereof has filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3): (i) the amount stated in such proof of claim, if no objection to such proof of claim has been interposed within any applicable period of limitation fixed by this Plan or a Final Order or (ii) such amount as shall be fixed by Final Order if an objection has been timely interposed; or (c) with respect to an Administrative Expense Claim that requires Court approval as a precondition to payment, such amount as shall be fixed by Final Order; or (d) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code, or from the denial or avoidance of an interest in property of the Estate, if, within 30 days after the judgment for the recovery of money or property, or after the judgment that denies or avoids any such interest, becomes a Final Order, the holder thereof has filed a

**Exhibit 1**
**Page 1 of 6**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

proof of claim with the Court respecting such Claim and has fully satisfied such judgment; or (e) any Claim allowed under or pursuant to the terms of this Plan; provided, however, that Allowed Amount shall not include interest, penalties or other charges accruing on a Claim after the Petition Date except as specifically provided for in this Plan or in the Confirmation Order.

Allowed Claim means a Claim for which an Allowed Amount has been determined.

Allowed Secured Claim means an Allowed Claim (other than an Administrative Expense Claim) that is secured by a lien, security interest or other charge against or interest in property of the Estate or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value (as set forth in the Plan, or if no value is specified, as determined in accordance with section 506 of the Bankruptcy Code or, if applicable, section 1111(b) of the Bankruptcy Code) of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

Allowed Unsecured Claim means an Allowed Claim that is not an Administrative Expense Claim or an Allowed Secured Claim.

Assets at any particular time means, collectively, all right, title and interest of the Estate in and to the property described in section 541 of the Bankruptcy Code, and includes all Avoidance Actions. The Assets do not include the Lowell Property, the 57th Street Property, the Creswell Property, the Wildgoose Subdivision Property or the 5409 Ivy Property.

Available Cash at any particular time means all Cash held by or for the Liquidating Trust less the aggregate of the Cash then designated for the Income Tax Reserve Fund or General Reserve Fund.

Avoidance Action means any claim or cause of action of the Estate that arises under sections 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

BAC Home Loans means BAC Home Loans Servicing, L.P.

Ballot means a ballot that is used by a holder of a Claim to accept or reject this Plan.

Bankruptcy Code means title 11 of the United States Code, and any amendments thereto applicable to this chapter 11 case, as in effect on the Confirmation Date.

Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure.

Cash means cash, cash equivalents and other readily marketable direct obligations of the United States of America.

Chase means Chase Home Finance, LLC.

Claim means a claim or right to payment against the Debtor or the Estate or against property of the Estate.

Exhibit 1
Page 2 of 6

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Case 09-60875-fra11    Doc 468    Filed 03/10/11    \\PMA\PCDOCS\PORTLAND\735708\6

Claiming Period means with respect to any distribution to be made by the Liquidating Trustee pursuant to this Plan, a period of 90 days following such distribution.

Class means a category of Claims which are substantially similar to each other, as classified pursuant to the Plan.

Collateral means, with respect to any Allowed Secured Claim, the property, or interest in property, of the Estate that secures such Claim.

Confirmation Date means the date of entry of the Confirmation Order.

Confirmation Order means the Court order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

Court means the United States District Court for the District of Oregon having jurisdiction over this chapter 11 case and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the District of Oregon, and any court having competent jurisdiction to hear appeals therefrom.

Creditor means a Holder of a Claim.

Creswell Property means the real property and improvements commonly known as 33681 East River Drive, Creswell, Oregon and legally described as THE EAST 85 FEET OF LOT 46, HILLDALE, AS PLATTED AND RECORDED IN VOLUME 12, PAGE 10, LANE COUNTY OREGON PLAT RECORDS, IN LANE COUNTY, OREGON.

Debtor means Barbara Parmenter and the Barbara Parmenter Revocable Trust.

Disallowed Amount means, with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the Allowed Amount thereof.

Disclosure Statement means the disclosure statement in support of this Plan and all exhibits and schedules thereto, together with any amendments or modifications which may be filed from time to time.

Disputed Amount means, with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount of the Claim which the Trustee concedes.

Disputed Claim means any Claim for which an Allowed Amount has not yet been determined and with respect to which the Debtor or the Committee has an objection (whether or not a written objection has been filed with the Court).

Distributions mean payments of Cash under this Plan to the Holders of Allowed Claims in Class 10.

**Exhibit 1**
**Page 3 of 6**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

PDXMA\PCDOCS\PORTLAND\735708\6

Effective Date means the first business day after the Confirmation Date.

Estate means the estate of the Debtor created by section 541 of the Bankruptcy Code.

Face Amount means with reference to any Claim: (a) if the holder thereof has not filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount of the Claim that is listed in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, as not disputed, contingent or unliquidated; or (b) if the holder thereof has filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount stated in such proof of claim.

Final Order means a judgment, order or other decree issued and entered by the Court so long as no stay thereof is in effect, or a stipulation or other agreement entered into which has the same effect with like finality.

General Reserve Fund at any particular time means the aggregate of: (a) Unclaimed Property; and (b) the estimated amount of Cash necessary to pay in full Allowed but unpaid Professional Fees and Professional Fees subject to final application, Administrative Claims, Priority Tax Claims, post-confirmation liquidation expenses and post-confirmation fees of professionals and the Liquidating Trustee.

Holder at any particular time means an entity that holds a Claim.

Insiders means VE Development LLC, Ginny Holdings, LLC, the Barbara Parmenter Living Trust, Bobbi LLC, Rip-Con LLC, Dandy Resorts LLC, and all entities in which the Debtor has a majority or controlling interest, and any other person or party which meets the definition of "insider" under 11 U.S.C. 101(31).

Ivy Street Property means the real property and improvements commonly known as 5409 Ivy Street, Springfield, Oregon and legally described as set forth on **Appendix C** attached.

KeyBank means KeyBank National Association.

Lien means a lien, security interest or other charge against or interest in property of the Estate or that is subject to setoff under section 553 of the Bankruptcy Code.

Liquidating Trust means the Liquidating Trust established pursuant to the Liquidating Trust Agreement.

Liquidating Trust Agreement means the Liquidating Trust Agreement for the Estate to be entered into on or before the Effective Date, by and between the Trustee, as Trustor, and Kenneth Eiler, as Liquidating Trustee. Notwithstanding the foregoing, the Trustee shall not enter into the Liquidating Trust Agreement until authorized by an order of the Bankruptcy Court, which may be the Confirmation Order. A copy of the Liquidating Trust Agreement is attached to the Disclosure Statement as Exhibit 4.

**Exhibit 1**
**Page 4 of 6**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Liquidating Trustee means Kenneth Eiler, or any successor to him that is appointed by the Court to serve as the Estate's agent under this Plan to administer the Assets, to prosecute, defend or resolve any Avoidance Actions and/or Disputed Claims, to effect Distributions that are required to be made under this Plan and to take such other actions as may be required to comply with the provisions of this Plan. The Liquidating Trustee shall have, in addition to the rights and powers conferred or retained under this Plan, all rights and powers of a trustee appointed pursuant to section 1104 of the Bankruptcy Code.

Lowell Property means the real property and improvements commonly known as 38 West Lakeview Avenue, Lowell, Oregon and legally described as set forth on **Appendix D** attached.

Net Proceeds means proceeds of sale remaining after payment in full of real property taxes due, payment of reasonable and customary title insurance premiums, escrow and closing costs, establishment of an Income Tax Reserve, payment of the fees and costs of the Liquidating Trustee and establishment of a General Reserve Fund.

ODVA means the State of Oregon, Department of Veterans' Affairs.

Petition Date means March 5, 2009.

Plan means this chapter 11 plan and all exhibits and schedules hereto, which are incorporated by reference, together with any amendments or modifications which may be filed from time to time.

Priority Tax Claim means an Allowed Unsecured Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

Professional Fees mean all Administrative Expense Claims of the kind described in paragraph (c) in the definition of Administrative Expense Claim for professional services rendered or expenses incurred prior to the Effective Date.

Pro Rata at any particular time means, with respect to any Claim in Class 10, the same proportion that the Allowed Amount of such Claim bears to the aggregate of the Allowed Amount of all Claims in Class 10.

Service List at any particular time means the Liquidating Trustee, Umpqua, the Debtor, the United States Trustee, and any Creditors who request in writing to the Liquidating Trustee after the Confirmation Date that all notices under the Plan be given to them.

Umpqua means Umpqua Bank.

Unclaimed Property at any particular time means the Cash held by or for the Liquidating Trustee, that is unclaimed by a Creditor following a distribution made by the Liquidating Trustee pursuant to the Plan (including property attributable to checks that have been returned as undeliverable without a proper forwarding address, checks that have not been cashed and checks that were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property).

**Exhibit 1**
**Page 5 of 6**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

\PDXMA\PCDOCS\PORTLAND\735708\6

Unsecured Creditor means a Holder of a Claim that is not an Administrative Expense Claim or an Allowed Secured Claim.

Village East Apartments means that real property and rental apartment complex located at 6330 Main Street, Springfield, Oregon, commonly known as the Village East Apartments, and legally described as set forth on **Appendix E** attached.

Village East Property means the Village East Apartments and the 6304 Main Property.

Wells Fargo means Wells Fargo Bank, N.A.

Wildgoose Subdivision Property means that real property located in Springfield, Oregon, and legally described as set forth on **Appendix F** attached.

**Exhibit 1**
**Page 6 of 6**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

CBMA\PCDOCS\PORTLAND\735708\6

# 57th Street Property
# Legal Description

Real property in the  County of Lane, State of Oregon, described as follows:

BEGINNING AT A POINT ON THE EAST LINE OF THE RICHARD G. HIXON DONATION LAND CLAIM NO. 47, TOWNSHIP 18 SOUTH, RANGE 2 WEST OF THE WILLAMETTE MERIDIAN, 529.9 FEET NORTH OF THE EASTERLY SOUTHEAST CORNER OF SAID CLAIM; RUNNING THENCE NORTH 89°43' WEST 479.1 FEET; THENCE NORTH 0°21' EAST 182.1 FEET; THENCE SOUTH 89°43' EAST 477.63 FEET TO THE EAST LINE OF SAID DONATION LAND CLAIM; THENCE SOUTH 182.1 FEET TO THE PLACE OF BEGINNING, IN LANE COUNTY, OREGON.

SAVE AND EXCEPT THAT PORTION CONVEYED TO LANE COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF OREGON, BY INSTRUMENT RECORDED MARCH 14, 1997, RECEPTION NO. 97-17518, OFFICIAL RECORDS OF LANE COUNTY, OREGON.

NOTE: This Legal Description was created prior to January 1, 2008.

Tax Parcel Number: 0560985

# 6304 Main Property
# Legal Description

Real property in the City of Springfield, County of Lane, State of Oregon, described as follows:

BEGINNING AT THE NORTHWEST CORNER OF THE STEPHEN GAGER DONATION LAND CLAIM NO. 45 IN TOWNSHIP 17 SOUTH, RANGE 2 WEST, WILLAMETTE MERIDIAN, IN LANE COUNTY, OREGON; THENCE RUN SOUTH ALONG THE WEST LINE OF SAID CLAIM NO. 45, A DISTANCE OF 492.19 FEET TO ITS INTERSECTION WITH THE CENTERLINE OF THE MCKENZIE HIGHWAY; THENCE RUN SOUTH 89º 45' 17" EAST ALONG THE CENTERLINE OF SAID MCKENZIE HIGHWAY, A DISTANCE OF 3199.92 FEET; THENCE LEAVING SAID CENTERLINE AND RUN NORTH PARALLEL WITH THE WEST LINE OF SAID CLAIM NO. 45, A DISTANCE OF 40.0 FEET TO A POINT ON THE NORTH RIGHT OF WAY LINE OF SAID MCKENZIE HIGHWAY, SAID POINT ALSO BEING THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED TRACT; THENCE RUN NORTH PARALLEL WITH THE WEST LINE OF CLAIM NO. 45, A DISTANCE OF 125.00 FEET; THENCE SOUTH 89º 45' 17" EAST PARALLEL WITH THE CENTERLINE OF SAID MCKENZIE HIGHWAY, A DISTANCE OF 93.13 FEET; THENCE SOUTH PARALLEL WITH THE WEST LINE OF SAID CLAIM NO. 45, A DISTANCE OF 125.00 FEET TO A POINT ON THE NORTH RIGHT OF WAY LINE OF SAID MCKENZIE HIGHWAY; THENCE NORTH 89º 45' 17" WEST ALONG SAID RIGHT OF WAY LINE 93.13 FEET TO THE POINT OF BEGINNING, IN LANE COUNTY, OREGON.

APN: 1235348

# Ivy Street Property
# Legal Description

Real property in the  County of Lane, State of Oregon, described as follows:

PARCEL I:

A PARCEL  OF LAND LYING IN THE NORTHEAST 1/4 OF SECTION 4, TOWNSHIP 18 SOUTH, RANGE 2 WEST OF THE WILLAMETTE MERIDIAN, AND BEING FURTHER DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF SOUTH 55TH PLACE WITH THE CENTERLINE OF IVY STREET; AND RUN THENCE NORTH 88° 20'  WEST ALONG THE CENTERLINE OF SAID IVY STREET AND ITS WESTERLY EXTENSION, 460.33 FEET; THENCE NORTH 40° 34' 00" WEST, 38.03 FEET TO THE POINT OF BEGINNING OF THE PARCEL HEREIN DESCRIBED; FROM THE POINT OF BEGINNING RUN THENCE SOUTH 40° 34' 00" EAST, 85.00 FEET; THENCE SOUTH 49° 26' 00" WEST, 120.00 FEET; THENCE NORTH 40° 34' 00" WEST, 85.00 FEET; THENCE NORTH 49° 26' 00" EAST, 120.00 FEET TO THE POINT OF BEGINNING, IN SPRINGFIELD, LANE COUNTY, OREGON.

**Lowell Property
Legal Description**


Real property in the County of Lane, State of Oregon, described as follows:

BEGINNING AT A POINT WHICH IS 214.00 FEET EAST AND 144.00 FEET SOUTH OF THE NORTHWEST CORNER OF THE SOUTHWEST ONE-QUARTER OF SECTION 14, TOWNSHIP 19 SOUTH, RANGE 1 WEST OF THE WILLAMETTE MERIDIAN; THENCE SOUTH 268.50 FEET; THENCE NORTH 89° 12' EAST 100.00 FEET; THENCE NORTH 117.11 FEET; THENCE WEST 88.00 FEET; THENCE NORTH 150.00 FEET; THENCE WEST 12.00 FEET TO THE POINT OF BEGINNING, IN LANE COUNTY OREGON.

NOTE: THIS LEGAL DESCRIPTION WAS CREATED PRIOR TO JANUARY 1, 2008.

Tax Parcel Number: 0816619

# Village East Apartments
## Legal Description

Real property in the County of Lane, State of Oregon, described as follows:

PARCEL I:

BEGINNING AT A POINT BEING NORTH 89º 53' 10" EAST 2758.86 FEET AND SOUTH 30.00 FEET FROM THE SOUTHEAST CORNER OF THE JESSE M. MANN DONATION LAND CLAIM NO. 74, IN TOWNSHIP 17 SOUTH, RANGE 2 WEST OF THE WILLAMETTE MERIDIAN; THENCE SOUTH 441.36 FEET TO THE NORTH MARGIN OF MCKENZIE HIGHWAY; THENCE ALONG SAID NORTH MARGIN NORTH 89º 45' 17" WEST 185.89 FEET; THENCE LEAVING SAID NORTH MARGIN NORTH 125.00 FEET; THENCE NORTH 89º 45' 17" WEST 73.13 FEET; THENCE NORTH 314.74 FEET TO THE SOUTH MARGIN OF NORTH "A" STREET; THENCE ALONG SAID SOUTH MARGIN NORTH 89º 53' 10" EAST 259.02 FEET TO THE POINT OF BEGINNING, IN LANE COUNTY, OREGON.

PARCEL II:

BEGINNING AT THE NORTHWEST CORNER OF THE STEPHEN GAGER DONATION LAND CLAIM NO. 45 IN TOWNSHIP 17 SOUTH, RANGE 2 WEST, WILLAMETTE MERIDIAN, IN LANE COUNTY, OREGON; THENCE RUN SOUTH ALONG THE WEST LINE OF SAID CLAIM NO. 45, A DISTANCE OF 492.19 FEET TO ITS INTERSECTION WITH THE CENTERLINE OF THE MCKENZIE HIGHWAY; THENCE RUN SOUTH 89º 45' 17" EAST ALONG THE CENTERLINE OF SAID MCKENZIE HIGHWAY, A DISTANCE OF 3199.92 FEET; THENCE LEAVING SAID CENTERLINE AND RUN NORTH PARALLEL WITH THE WEST LINE OF SAID CLAIM NO.45, A DISTANCE OF 40.0 FEET TO A POINT ON THE NORTH RIGHT OF WAY LINE OF SAID MCKENZIE HIGHWAY, SAID POINT ALSO BEING THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED TRACT; THENCE RUN NORTH PARALLEL WITH THE WEST LINE OF CLAIM NO. 45, A DISTANCE OF 125.00 FEET; THENCE SOUTH 89º 45' 17" EAST PARALLEL WITH THE CENTERLINE OF SAID MCKENZIE HIGHWAY, A DISTANCE OF 93.13 FEET; THENCE SOUTH PARALLEL WITH THE WEST LINE OF SAID CLAIM NO.45, A DISTANCE OF 125.00 FEET TO A POINT ON THE NORTH RIGHT OF WAY LINE OF SAID MCKENZIE HIGHWAY; THENCE NORTH 89º 45' 17" WEST ALONG SAID RIGHT OF WAY LINE 93.13 FEET TO THE POINT OF BEGINNING, IN LANE COUNTY, OREGON.

Tax Parcel Number: 0140234, 0140242, 0140226, 1235348 and 1235348

PARCEL II:

BEGINNING AT A POINT BEING NORTH 0º 01' 45" WEST 2028.60 FEET AND SOUTH 89º 25' 40" WEST 668.88 FEET FROM THE EAST SOUTHEAST CORNER OF THE R.G. HIXON DONATION LAND CLAIM NO. 47, IN TOWNSHIP 18 SOUTH, RANGE 2 WEST OF THE WILLAMETTE MERIDIAN, SAID POINT ALSO BEING ON THE EAST RIGHT-OF-WAY LINE OF A BONNEVILLE POWER ADMINISTRATION LINE EASEMENT; THENCE ALONG SAID EAST RIGHT-OF-WAY LINE SOUTH 3º 25' WEST 442.26 FEET; THENCE LEAVING SAID EAST RIGHT-OF-WAY LINE AND CROSSING SAID EASEMENT SOUTH 89º 25' 40" WEST 225.54 FEET TO THE WEST RIGHT-OF-WAY LINE OF SAID EASEMENT; THENCE ALONG SAID WEST RIGHT-OF-WAY NORTH 3º 25' EAST 442.26 FEET TO THE SOUTH MARGIN OF THE WEYERHAEUSER BOOTH-KELLY ROAD; THENCE ALONG SAID SOUTH MARGIN NORTH 89º 25' 40" EAST 225.54 FEET TO THE POINT OF BEGINNING, IN LANE COUNTY, OREGON.

EXCEPTING THAT PORTION LYING EASTERLY OF THE WEST LINE OF ROYAL RIDGE AS PLATTED AND RECORDED IN FILE 73, SLIDE 225, LANE COUNTY OREGON PLAT RECORDS, IN LANE COUNTY, OREGON.

PARCEL III:

BEGINNING AT A POINT BEING NORTH 1580.45 FEET AND WEST 696.22 FEET FROM THE EAST SOUTHEAST CORNER OF THE R.G. HIXON DONATION LAND CLAIM NO. 47, IN TOWNSHIP 18 SOUTH, RANGE 2 WEST OF THE WILLAMETTE MERIDIAN, POINT ALSO BEING ON THE EAST RIGHT-OF-WAY OF A BONNEVILE POWER ADMINISTRATION LINE EASEMENT; THENCE ALONG SAID EAST RIGHT-OF-WAY LINE SOUTH 3º 25' 00" WEST 504.34 FEET; THENCE LEAVING SAID EAST RIGHT-OF-WAY LINE WEST 20.04 FEET; THENCE NORTH 3º 25' 00" EAST 291.64 FEET; THENCE SOUTH 89º 25' 40" WEST 205.48 FEET TO THE WEST RIGHT-OF-WAY OF SAID EASEMENT; THENCE ALONG SAID WEST RIGHT-OF-WAY LINE NORTH 3º 25' 00" EAST 212.50 FEET; THENCE LEAVING SAID WEST RIGHT-OF-WAY LINE AND CROSSING SAID RIGHT-OF-WAY NORTH 89º 25' 40" EAST 225.54 FEET TO THE POINT OF BEGINNING, IN LANE COUNTY, OREGON.

EXCEPTING THAT PORTION LYING EASTERLY OF THE WEST LINE OF ROYAL RIDGE, AS PLATTED AND RECORDED IN FILE 73, SLIDE 225, LANE COUNTY OREGON PLAT RECORDS, IN LANE COUNTY, OREGON.

PARCEL IV:

BEGINNING AT A POINT BEING NORTH 89º 48' 30" WEST 482.78 FEET FROM THE EAST SOUTHEAST CORNER OF THE R.G. HIXON DONATION LAND CLAIM NO. 47, IN TOWNSHIP 18 SOUTH, RANGE 2 WEST OF THE WILLAMETTE MERIDIAN; THENCE NORTH 89º 48' 30" WEST 532.93 FEET; THENCE NORTH 3º 25' EAST 390.00 FEET; THENCE SOUTH 89º 48' 30" EAST 205.25 FEET; THENCE NORTH 3º 25' EAST 686.2 FEET; THENCE EAST 268.14 FEET; THENCE SOUTH 0º 01' 45" EAST 365.0 FEET; THENCE SOUTH 0º 23' 10" WEST 710.40 FEET TO THE POINT OF BEGINNING, IN LANE COUNTY, OREGON.

EXCEPT THAT PORTION GRANTED TO LANE COUNTY BY JUDGMENT ENTERED DECEMBER 11, 1998, LANE COUNTY CIRCUIT COURT CASE NO. 16-97-03333.

PARCEL V:

BEGINNING AT A POINT BEING NORTH 89º 48' 30" WEST 482.78 FEET FROM THE EAST SOUTHEAST CORNER OF THE R.G. HIXON DONATION LAND CLAIM NO. 47, IN TOWNSHIP 18 SOUTH, RANGE 2WEST OF THE WILLAMETTE MERIDIAN; THENCE NORTH 89º 48' 30" WEST 532.93 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 3º 25' EAST 390.00 FEET; THENCE SOUTH 89º 48' 30" EAST 205.25 FEET; THENCE NORTH 3º 25' EAST 686.2 FEET TO THE SOUTHWEST CORNER OF ROYAL RIDGE, AS PLATTED AND RECORDED IN FILE 73, SLIDE 225, LANE COUNTY OREGON PLAT RECORDS; THENCE NORTH 03º 25' EAST ALONG THE WEST LINE OF SAID ROYAL RIDGE TO THE SOUTH LINE OF PARCEL II AS CONVEYED TO JAMES D. PARMENTER AND BARBARA K. PARMENTER BY WARRANTY DEED RECORDED JUNE 18, 1979, RECEPTION NO. 79-35384, OFFICIAL RECORDS OF LANE COUNTY, OREGON. THENCE ALONG THE SOUTH LINE OF SAID PARMENTER TRACT SOUTH 89º 25' 40" WEST, A DISTANCE OF 205.48 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER THEREOF; THENCE NORTH 03º 25' EAST 654.76 FEET TO THE SOUTH MARGIN OF WEYERHAEUSER BOOTH-KELLY ROAD; THENCE WEST ALONG THE SOUTH LINE OF THE WEYERHAEUSER BOOTH-KELLY ROAD 594.58 FEET, MORE OR LESS, TO THE WEST LINE OF SAID HIXON DONATION LAND CLAIM; THENCE SOUTH ALONG THE WEST LINE OF SAID HIXON DONATION LAND CLAIM TO A POINT THAT IS 1523.05 FEET NORTH AND 1489.0 FEET WEST OF THE MOST EASTERLY SOUTHEAST CORNER OF SAID HIXON DONATION LAND CLAIM; THENCE EAST 266.61 FEET; THENCE SOUTH 269.67 FEET; THENCE SOUTH 60.0 FEET TO THE SOUTHEAST CORNER OF THAT 60.0 FOOT ROADWAY AS DESCRIBED IN THAT STREET DEED TO THE CITY OF SPRINGFIELD RECORDED JANUARY 05, 1979, RECEPTION NO. 79-00757; THENCE WEST 244.61 FEET TO A POINT THAT IS 22.0 FEET EAST (AT RIGHT ANGLES TO) OF THE WEST LINE OF SAID HIXON DONATION LAND CLAIM; THENCE SOUTH PARALLEL WITH THE WEST LINE OF SAID HIXON DONATION LAND CLAIM, TO THE NORTHWEST CORNER OF THAT CERTAIN TRACT OF LAND CONVEYED TO DAVID N. BIRDSEYE, ET UX, BY DEED RECORDED FEBRUARY 17, 1950 IN BOOK 409, PAGE 540, OFFICIAL RECORDS OF LANE COUNTY, OREGON; THENCE NORTH 89º 40' EAST 100 FEET TO THE NORTHEAST CORNER OF SAID BIRDSEYE TRACT; THENCE SOUTH ALONG THE EAST LINE OF SAID BIRDSEYE TRACT 240.0 FEET TO THE SOUTHEAST CORNER OF SAID BIRDSEYE TRACT; THENCE NORTH 89º 40' EAST 177.30 FEET TO THE ANGLE CORNER ON THE EAST LINE OF SAID HIXON DONATION LAND CLAIM; THENCE SOUTH 89º 48' 30" WEST ALONG THE SOUTH LINE OF SAID HIXON DONATION LAND CLAIM TO THE TRUE POINT OF BEGINNING, IN LANE COUNTY, OREGON.

EXCEPTING THEREFROM THAT PORTION WITHIN THE FOLLOWING DESCRIBED TRACT:

COMMENCING AT THE INTERSECTION OF SOUTH 55TH PLACE WITH THE CENTERLINE OF IVY STREET; AND RUN THENCE NORTH 88º 00' WEST ALONG THE CENTERLINE OF SAID IVY STREET AND ITS WESTERLY EXTENSION 460.33 FEET; THENCE NORTH 40º 34' 00" WEST 38.03 FEET TO THE POINT OF BEGINNING OF THE PARCEL HEREIN DESCRIBED; FROM THE POINT OF BEGINNING; RUN THENCE SOUTH 40º 34' 00" EAST 85.00 FEET; THENCE SOUTH 49º 26' 00" WEST 120.00 FEET; THENCE NORTH 40º 34' 00" WEST 85.00 FEET; THENCE NORTH 49º 26' 00" EAST 120.00 FEET TO THE POINT OF BEGINNING, IN SPRINGFIELD, LANE COUNTY, OREGON.

ALSO EXCEPT THAT PORTION GRANTED TO LANE COUNTY BY JUDGMENT ENTERED DECEMBER 11, 1998, IN LANE COUNTY CIRCUIT COURT CASE NO. 16-97-03333.

## CERTIFICATE OF SERVICE

I hereby certify that I served copies of the foregoing **TRUSTEE'S FIRST AMENDED PLAN OF REORGANIZATION (MARCH 10, 2011)** on the following parties by CM/ECF:

- SAMUEL L BOYD    sboyd@boydfirm.com, mtruly@boydfirm.com; rwillingham@boydfirm.com; cjobe@boydfirm.com
- CRAIG J CAPON    craig.j.capon@harrang.com, ann.flagg@harrang.com; marjorie.berger@harrang.com; deborah.boersma@harrang.com
- MARJORIE A ELKEN    marjorie.elken@harrang.com, deborah.boersma@harrang.com
- AIMEE R LOBO-BERG    aimee.lobo-berg@irscounsel.treas.gov, porirs.bk.email@irscounsel.treas.gov
- JAMES K MIERSMA    ecfor@rcflegal.com, ecfor@rcflegal.com
- DAVID B MILLS    davidbmills@comcast.net, davidbmills@cs.com
- R SCOTT PALMER    rspalmer@wlrlaw.com, cpivoda@wlrlaw.com;lsharkey@wlrlaw.com
- DEAN PROBER    cmartin@pprlaw.net
- BETH ANN SCHENZ    bronationalecf@weltman.com
- DAVID B SCHUMACHER    schulaw@comcast.net
- US Trustee, Eugene    USTPRegion18.EG.ECF@usdoj.gov
- JAMES ^MIERSMA    ecfor@rcflegal.com

and on the following parties by mailing a full, true and correct copy in a sealed first-class postage prepaid envelope, addressed to the parties listed below, and deposited with the United States Postal Service at Portland, Oregon on the date set forth below:

> Barbara K. Parmenter
> 5409 Ivy St
> Springfield, OR 97478

DATED: March 10, 2011

/s/ Stuart Wylen
Stuart Wylen, Legal Secretary

Page 1 – **CERTIFICATE OF SERVICE**

\\tank\Users\Home\wylen.s\Desktop\USE FOR COS.DOC

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525